## JAMES D. QUINN, Appellant, v. METROPOLITAN STREET RAILWAY COMPANY.

### Division One, March 31, 1909.

1. **NEGLIGENCE: Boarding Street Car: Passenger: Refusing Instruction.** The instruction given told the jury in effect that if plaintiff had offered himself as a passenger on the street car whilst the same was stopped for that purpose, and that defendant had not permitted the car to remain standing for a sufficient time to allow plaintiff to board the same, and further that whilst plaintiff was in the act of boarding the same said car was negligently and carelessly started, and plaintiff was thereby injured, then the finding should be for plaintiff. *Held*, that this instruction made it the imperative duty of the jury to find for plaintiff if they found (1) certain facts which in law made him a passenger and (2) if they found certain other facts which evidenced a failure of defendant to perform the high duty required of a carrier to its passenger; therefore, the court did not err in refusing an instruction for plaintiff which told the jury that "if you find and believe from the evidence that the cable car in question came to a standstill at the usual stopping place at the junction where passengers were let off and on, and that while said car was standing the plaintiff attempted to board the same with the intention of becoming a passenger thereon, then you are instructed that the defendant was bound to exercise towards him the utmost care and skill for his safety that prudent men would have exercised while engaged in the same business under the same or similar circumstances;" for, at most, this instruction was an abstract proposition of law, and submitted no issue not submitted by the one given.

2. ————: ————: ————: **Stopping Reasonable Length of Time.** Where the signal to start the street car was given prior to the start, it was not error to instruct the jury "if the car which plaintiff attempted to board stopped at the usual stopping place where plaintiff claims to have been injured a

reasonable length of time to enable plaintiff to board the same in safety, by the exercise of ordinary care on his part," then he could not recover. It but goes to the contributory negligence of plaintiff in not using reasonable expedition in boarding the car after it had stopped for the reception of passengers.

3. ————: ————: ————: **Invitation to Board.** When a street car has been stopped for the reception of passengers for a reasonable length of time, the invitation to enter has closed when the signal is given to start.

4. ————: ————: ————: **Releasing Handhold: Jerk.** Plaintiff had both feet upon the steps of the car and both hands holding the guardrail, and rode in that position a short distance until a lady discovered her six-year-old son had not entered the car and began to scream. He thought she was going to jump off and told her not to jump, but about the same time released the hold on one guardrail, and by a jerk was thrown off. The alleged jerk is not shown to be out of the usual for the place and surroundings. *Held*, that the release of his hold was not occasioned by defendant, but by the acts of the woman, and the court did not err in telling the jury that "if plaintiff got upon the car before it started, or while it was in motion, and rode upon it for some distance with each hand holding to the guardrail, in a reasonably safe position and place upon said car, and thereafter he let go of one of said guardrails and fell from the car," he could not recover.

5. ————: **Instruction:** **Against Interest: As In a Criminal Case.** An instruction telling the jury that plaintiff is a competent witness in his own behalf, that in determining the credibility of his testimony the jury should consider his interest in the result of the trial, that what he said against his interest the law presumes to be true, and what he said in his own behalf may be treated as true or false, etc., is erroneous and prejudicial. But, in spite of that error a verdict for defendant will not be disturbed, if the evidence is such that the court should have sustained a demurrer to plaintiff's case.

6. ————: **Reading Stenographer's Notes to Jury: By Consent.** Where both sides consented, upon the request of the jury, that the stenographer might go to their room, and read all his notes to them, and he went before them, the appellant is not chargeable with an interruption in the reading by the jury informing the stenographer that they had heard all they wished to hear. Besides, the report that the stenographer made of what occurred in the jury room is no proper part of the bill of exceptions.

7. ————: **Boarding Street Car: Independent Cause: No Case.** The car stopped at the usual place and the usual time, and plaintiff had notice of its starting before it started. He got on the steps and seized both handholds, and was in a place of

reasonable safety, and rode in that place until another passenger began to scream that her six-year-old son had not boarded the car, and thinking she was going to jump off he voluntarily released one handhold, and then fell off as the car was crossing other tracks. He says his fall was caused by a jerk ⸳of the car, but his evidence shows there was nothing unusual in its movement when the place and circumstances are considered. *Held*, that the accident was the result of his own, voluntary act, superinduced by an independent cause, and a demurrer to his case should have been sustained, and therefore ˙ a verdict for defendant will not be reversed, though an erroneous instruction was given at defendant's request.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*Bird & Pope* and *T. J. Madden* for appellant.

(1) The court erred in refusing instruction A requested by plaintiff. Orcutt v. Building Co., 201 Mo. 424; Barth v. Railroad, 142 Mo. 549; Devoy v. Railroad, 192 Mo. 197; Clark v. Railroad, 127 Mo. 208; Furnish v. Railroad, 102 Mo. 450; Sweeney v. Railroad, 150 Mo. 401; Redmon v. Railroad, 185 Mo. 9; O'Gara v. Railroad, 204 Mo. 724; Schloemer v. Railroad, 204 Mo. 99; Kirkpatrick v. Railroad, 109 S. W. 687. (2) The court erred in giving instruction 9D on behalf of defendant. Behen v. Railroad, 186 Mo. 430; Hannon v. Railroad, 102 Mo. App. 216; 1 Fetter on Carriers, sec. 72, p. 178; Clark's Accident Law (2 Ed.), sec. 27, p. 54; Nelson v. Railroad, 113 Mo. App. 708; Green v. Railroad, 122 Mo. App. 647; Bell v. Railroad, 125 Mo. App. 660; Thompson v. Railroad, 111 Mo. App. 465; 3 Thomp. on Law of Neg. (2 Ed.), sec. 3520. (3) The court erred in giving instruction 11D on behalf of defendant. Zander v. Railroad, 206 Mo. 445; Brown v. Railroad, 106 S. W. 552; Stetzler v. Railroad, 109 S. W. 668. (4) The court erred in giving instruction 8D for defendant. Shanahan v.

Railroad, 109 Mo. App. 228; Stoddard v. Railroad, 105 Mo. App. 512; Spencer v. Railroad, 111 Mo. App. 653; Flaherty v. Railroad, 106 S. W. 15; Chitty v. Railroad, 148 Mo. 75; Dimmit v. Railroad, 40 Mo. App. 654; 1 Suth. on Damages, 79. (5) The court erred in giving of its own motion instruction 15, the instruction given in response to the request of the jury. Glenn v. Hunt, 120 Mo. 330; State v. Alexander, 66 Mo. 148. (6) The court erred in sending the stenographer into the jury room during the noon recess to read the testimony of plaintiff. Padgitt v. Moll, 159 Mo. 143; Welsh v. Railroad, 58 Mo. App. 528; Fleming v. Shenandoah, 67 Iowa 505; Danes v. Pearson, 6 Ind. App. 465; Fish v. Smith, 12 Ind. 563; High v. Chick, 81 Hun 100, 30 N. Y. Supp. 652; Read v. City of Cambridge, 124 Mass. 567; Campbell v. Beckett, 8 Ohio St. 210.

*John H. Lucas* and *Ben F. White* for respondent.

(1) Under the evidence what was the proximate cause of plaintiff's fall? The premature start of the car? Certainly not. His fall was not caused by the car starting either before he was on or while he was getting on. Our reason for making this declaration is that it is borne out by all the evidence in the case, that for plaintiff showing that he was safely on the car with both feet, and holding with both hands, before the car crossed Delaware street, and that he rode for at least a car length or further in this position. Plaintiff's evidence, then, went to show that he was not thrown while he was in the act of boarding the car. It shows that he was not thrown at the junction, where he was boarding the car, but past the middle of the next street—Delaware—and after he had ridden more than a car length. Neither does it show that his fall was due to an insecure footing on the step, nor to an insecure hold with his hands, nor to a sudden

start of the car, but it does show that he had a firm
hold with both his hands, and had both feet firmly
on the step of the car, and that he was riding in that
position. He explicitly says that no one interfered
with him in any way during this time, and that he
was doing nothing during that time except to ride
along. Plaintiff's testimony shows that while riding in
that position he let go with one hand, for some reason,
and which is not quite clear from his testimony. But
his purpose in letting go is not material, if it was
voluntary, for it was the letting go that caused his
fall. He said he thought the woman whose boy had
been left was going to jump off the car and he let go
with his left hand and fell from the car. Logan v.
Railroad, 96 Mo. App. 461. It cannot be claimed that
plaintiff, in attempting to save a 'woman from an ap-
prehended danger, was acting in the line of a duty
he owed to defendant or to the woman, although his
act may have been a commendable one from humani-
tarian motives. Ins. Co. v. Tweed, 7 Wall. 44. It
would perhaps serve no useful purpose to cite authori-
ties to the effect that plaintiff can recover only, if at
all, upon the specific acts of negligence charged, as
this law is so well settled as to be without exception.
One of the latest cases may be mentioned, where both
the law and the reasons therefor are clearly set forth:
Roscoe v. Railroad, 202 Mo. 576. And the proof must
not only show that the specific acts of negligence
charged were committed, or some of them, but must
also show that such acts as were committed were the
proximate cause of the accident. Logan v. Railroad,
96 Mo. App. 461. (2) The evidence showing con-
clusively that plaintiff's fall was due to an independent
act on his part, and not to the acts complained of in
the petition, a verdict for plaintiff 'would not have been
permitted to stand. Where it is for the right party
the judgment should be affirmed, error or no error
appearing in the record. R. S. 1899, sec. 865; Basset

v. Glover, 66 Mo. 381; Fairbanks v. Long, 91 Mo. 628; Bushey v. Glenn, 107 Mo. 331; Henry v. Railroad, 113 Mo. 526; Burns v. City, 131 Mo. 372; State v. Jennings, 134 Mo. 281; Carr v. Railroad, 195 Mo. 224.

GRAVES, J.—Defendant, a street railway corporation, is sued by plaintiff for personal injuries. Trial in the circuit court, before a jury, resulted in a verdict for defendant, upon which judgment was entered. From this judgment, plaintiff in due form appealed. The negligence charged to the defendant is thus couched in the language of the petition:

"That on or about the 29th day of January, A. D. 1903, at about the hour of 8:00 o'clock p. m. of said day, plaintiff offered himself as a passenger on a westbound cable train of said defendant at the junction of Ninth, Main and Delaware streets, in Kansas City, Jackson county, Missouri. That said cable train was not permitted to remain standing a reasonably sufficient length of time to enable said plaintiff to board said train, but was carelessly and negligently started forward by said defendant and its conductor and gripman in charge thereof (whose names are unknown to plaintiff), while plaintiff was in the act of boarding said train, and before said plaintiff had had reasonably sufficient time to board said train. That said cable train was also carelessly and negligently started forward without its said conductor and gripman giving plaintiff any warning of the starting of said train, although said defendant, its agents, servants and employees in charge of said train knew, or by the exercise of ordinary care should have known, that plaintiff was in the act of boarding said train, and by reason of the said careless and negligent acts of said defendant as aforesaid plaintiff was thrown and dragged or caused to fall from said train with great force and violence to the street and pavement."

Severe injuries were alleged to have been received, including injuries to the nervous system, brain, back, spine, hip, right side, eyes, arms, shoulders "and internal injuries, the exact nature of which are unknown to plaintiff." In other words, injuries, both unknown and known were charged, and in quantity evidently sufficient in number, and in quality, sufficient in seriousness, to justify the damages asked in the amount of $5,000.

The answer was a general denial and a plea of contributory negligence. Reply was in the conventional form for such an answer.

The plaintiff complains of the action of the trial court in refusing an instruction asked by him and in giving several asked by defendant, as well as some given by the court of its own motion. He also urges as error the fact that the trial court erred in permitting the stenographer to read his notes to the jury.

Defendant contends that there was no error in these regards, but urges that even if there were errors thus committed, yet the evidence shows that plaintiff was not entitled to recover, and the verdict is for the right party and should not be disturbed.

I. Plaintiff's instruction which was refused, and of which complaint is made, is in this language:

"If you find and believe from the evidence that the cable car in question came to a standstill at the usual stopping place at the junction where passengers were let off and on, that while said car was standing the plaintiff attempted to board the same with the intention of becoming a passenger thereon, then you are instructed that the defendant was bound to exercise towards him the utmost care and skill for his safety that prudent men would have exercised while engaged in the same business under the same and similar circumstances."

As an abstract statement of the law this instruction may be correct, but 'we do not so say.' It uses the word "utmost" instead of the word "highest" as is usually used in instructions defining the measure of care required, but there may be but slight difference in the two words. The latter has the approval of the courts and should be used. Considering this act of the court alone, i. e., the refusal of this instruction, when considered with the instructions given, we would not denominate it further than error, but not necessarily reversible error. By the first instruction for plaintiff the learned trial court had told the jury in effect that if the plaintiff had offered himself as a passenger on the car in question whilst the same was stopped for that purpose, and that defendant had not permitted the car to remain standing for a sufficient time to allow plaintiff to board the same, and further that whilst he was in the act of boarding the same said car was negligently and carelessly started, and the plaintiff was thereby injured, then the finding should be for the plaintiff. This instruction given for the plaintiff made it imperative to find for him under a given state of facts. It does not include the abstraction as to defendant's duties to its passengers, but it does say that if the jury found certain things, it must find for the plaintiff. These certain things were (1) acts upon his part which in law made him a passenger and (2) acts upon the part of the defendant, which if found, evidenced a failure to perform 'the high duty required of a carrier to its passenger. With this instruction given, imperative and absolute as it is, the plaintiff lost nothing by the refusal of the abstract declaration contained in the one refused. The refusal of this instruction when considered with those given was not reversible error, to say the least. The case of Orcutt v. Century Building Company, 201 Mo. 424, is cited as authority. In that case we did discuss the duties of carriers to passengers, and we did an-

nounce that the highest degree of care was required, and we did reverse the case because the court had refused to give an instruction upon the degree of care required, and we think properly so, in that case. But there the situation was different. In that case the defendant was claiming that the plaintiff was a mere licensee, and therefore was only entitled to ordinary care, but the plaintiff was contending that he was a passenger and thereby entitled to the degree of care required in cases where such relation of passenger and carrier exists. In that case the court adopted the defendant's theory and instructed only on the use of ordinary care. In that we said the court was wrong. In that case the refusal of the plaintiff's instruction for the highest degree of care, and the giving of the defendant's instruction for only ordinary care, evinced the fact that the court tried the case on the wrong theory, i. e., that plaintiff was a mere licensee and not a passenger. No such condition appears in this case. Standing alone, the refusal of this instruction should not reverse the case.

II. Nor is there error in the giving of instruction 9D for the defendant. The instructions reads:

"The court instructs the jury that if you find and believe from the evidence that the car upon which the plaintiff boarded or attempted to board, stopped at the usual stopping place where plaintiff claims to have been injured a reasonable length of time to enable plaintiff to board the same in safety, by the exercise of ordinary care on his part, then you will find your verdict for the defendant."

Under all the evidence this was a usual stopping place. Under all the testimony the car stopped. Plaintiff says he was waiting for it before it came, but was talking to a friend in the meantime. One of the plaintiff's witnesses says she boarded the car at the rear end and had walked through the car to the front

end and was seating herself when the signal to start
the car was given. If she could do that, why could not
plaintiff? Nor is it disputed that the signal to start
the car was given prior to the start. Plaintiff says
he heard it and understood it. The cars were not
crowded, according to all the evidence. By cars, we
mean the grip car and the trailer which followed, for
this was a cable train composed of the two cars. This
instruction, whilst not mentioning the term, but goes
to the contributory negligence of the plaintiff in not
using reasonable care and expedition in boarding the
train whilst it was there standing for the receipt of
passengers. He says he was there before hand, and
no express evidence shows that the car did not stop for
the usual time. There is express evidence that it did
stop the usual time for cars at that place, and this from
plaintiff's witnesses. Under the facts disclosed this
instruction was proper. When a car has been stopped
for the receipt of passengers for a reasonable time,
and then the signal to start is given before a person
attempts to enter, then the invitation to enter is closed.
Without some kind of notice prior to the signal to start,
street railways are not required to anticipate that par-
ties at or near its stopping place are intending to be-
come passengers. And if the signal to start is given
prior to any attempt to enter the car, the party must
heed the signal, and especially so if he knows the mean-
ing, as did the plaintiff. The giving of the signal to
start is evidence of the fact that the invitation to enter
has been closed and an attempt to enter the car after
such signal and after it started would be contributory
negligence.

III. Nor can we say there was error in giving
instruction 8D for the defendant. This instruction
reads: "The court instructs the jury that if you find
and believe from the evidence that plaintiff got upon
the car in question before the car started, or while

it was in motion, and rode upon said car some distance with each hand holding to the guardrail in a reasonably safe position and place upon said car, and that thereafter he let go of one of said guardrails and fell from the car, your verdict will be for the defendant.''

The plaintiff admits that he had both feet upon the steps of the car and both hands holding the guardrails on the car, in which position he rode a short distance, until a lady passenger discovered that her six-year-old son had not entered the car and began to scream.  He says he thought she was going to jump off of the car and told her not to jump, but about the same time released the hold he had with one of his hands, and by a jerk was thrown off.  Had he held to the position he occupied no trouble would have ensued.  Such is the import of his testimony, although not in express language.  The release of his hold upon the car was not occasioned by the defendant, for at the time the boy was safely upon the sidewalk of the street.  It was occasioned by the acts of the woman, for which the evidence does not convict the defendant.  The car was crossing other tracks in another street, and the alleged jerk is not shown to be out of the usual for the place and the surroundings, when the character of the train is considered.  The giving of this instruction was not error.

IV.  Instruction 11D given by the court for the defendant is urged as error, and in this we think there is force in the objection.  The instruction reads:

'' The court instructs the jury that while the plaintiff is a competent witness in this case, and you should consider his testimony in arriving at your verdict, yet in determining what weight and credibility you will give to his testimony you should consider his interest in the result of the trial and that he is the plaintiff testifying in his own behalf; whatever he may have said

against his interest the law presumes to be true, because against his interest, but whatever he may have said in his own behalf you are not obliged to believe, but you may treat the same as true or false, just as you believe it true or false, when considered in connection with all the testimony in the case.''

This form of an instruction has been especially condemned by this court, and we think rightfully. [Zander v. Railroad, 206 Mo. 445, and cases cited.] Nor will it do to say that the giving of such an instruction does not work prejudice.

V. The other objection to an instruction given by the court does not seem to us at all tenable, and not one to which we should give space in an opinion. Nor is the objection as to the stenographer good, for it appears from the record thus:

''While the jury were deliberating upon the verdict, the jury sent word to the court that it desired to have read to it the testimony of plaintiff. Mr. Loomis, attorney for defendant, stated that he was willing to have the stenographic notes read to the jury. One of the counsel for plaintiff said he was willing to have that done, but wanted all of it read. During the noon recess of a case then on trial the court sent the official stenographer, Darius A. Brown, Esq., into the jury-room with instructions to read said stenographic notes. Sometime during the afternoon the jury returned a verdict and were discharged. Afterwards the official stenographer reported to the court that before he had finished reading his stenographic notes the jury stopped him, saying: 'We have heard enough; that is all we want,' and excluded him from the jury-room.''

Under this narration in the bill of exceptions it appears that both parties agreed to the stenographer reading all of his notes upon the testimony of the plaintiff. By this agreement the stenographer entered

and read. His presence there was by consent. What the jury did with him thereafter was not at the suggestion of the defendant, nor does it appear that the jury was apprised of the full agreement, so as to make it misconduct upon their part. We hardly think this unsolicited act upon the part of the jury should be held prejudicial error. But, further, the bill of exceptions goes beyond the limit. Such bills should only show what actually occurred in court, and not what may have been reported to the court. Such part should be excluded.

VI. This brings us to the critical question in this case. Defendant urges that upon the whole record the verdict is right. This requires both an inquiry as to the pleadings and the evidence. That the petiiton charges specific acts of negligence cannot be questioned. The extent and character of the charge is, however, for consideration. An analysis of these charges and an application of the evidence deduced by plaintiff's witnesses will solve this question. We say this because the evidence introduced by defendant does not aid the plaintiff. In other words, if the case was wrongfully submitted to the jury, the demurrer to the testimony should have been sustained at the close of plaintiff's case. [Matz v. Railroad, 217 Mo. 275.]

As to the evidence, the record shows that the plaintiff was waiting for this car, but talking to a friend, a young man from the stockyards. His witnesses say that the car stopped the usual length of time at that place. The car was a west-bound car on Ninth street, but went out on Summit street. The stopping place was the junction of Main and Delaware streets in Kansas City, too well known to the jurisprudence of this State and the reported cases to need further comment. Just how many got off of the car does not appear, but it does appear that the cars were not crowded, and that only four parties were

taking passage, including the plaintiff. It does appear that one of those parties, who like plaintiff was there awaiting the car, did get on the coach from the rear end and walking clear through the car to the front was in the act of seating herself when the signal to start was given. It does appear that two of the prospective passengers were a woman and her six-year-old son, who had come in on a car from another direction. This lady had some baskets of groceries and she herself got on the car on the platform thereof. She was recognized by the other lady, who instead of seating herself started to open the front door of the coach for her when the car started. At that moment it was discovered that the little boy had not gotten on the car, and the mother evidently made some demonstrations. Plaintiff says that the little boy was trying to board the car after it started and he pushed him back, fearing that he would fall under the wheels. Plaintiff finally admitted that he got both feet upon the steps of the car and was holding with both hands, when the mother of the boy, as he thought, was going to attempt to get off of the moving car. He rode in this position from the junction sidewalk and stopping place, practically half across Delaware street, and was thrown down by an accelerated forward movement of the car, if such it could be called under the evidence. Plaintiff reiterates a description of the manner of his fall several times, but the following from his cross-examination fairly states his views of the matter:

"Q. Now, Mr. Quinn, I am trying to get at this fact—I understood you to say that you got on the car, and was standing on the step of the car with both feet on the lower step, with your right hand ahold of one railing, the front railing, and your left hand ahold of the other, that after the car started you got into that position. Now, can you understand me? A. It moved up onto Delaware street; the front end of the car was right up to the tracks on Delaware street.

"Q. Now, Mr. Quinn, the front end of which car had got up to the tracks, the rear car or the front car? A. The rear car.

"Q. The rear car had got up to the tracks on Delaware street? A. Yes, sir.

"Q. Now, Mr. Quinn, what did you do then? A. Why, this lady was in front of me, and I thought she was going to get off, and the man rang the bell.

"Q. Who rang the bell?

"Mr. Bird: I submit, if the court please, he ought not to interrupt this witness.

"The Court: He was not going to interrupt the witness; he just asked him who rang the bell.

"To which action and ruling of the court the plaintiff at the time duly excepted.

"Q. Who rang the bell? A. Some man that was standing in front on the platform, on the far side.

"Q. Rang the bell? A. Rang the bell.

"Q. Then what was done? A. And this lady came over.

"Q. From where? A. Over towards me, and I thought she was going to get off.

"Q. Well, what did she do? A. And she came over, and it seemed I let go of this hand to let her off, the left hand.

"Q. Let go of which hand? A. The left hand.

"Q. Let go of your left hand; yes, that is the hand you had hold of the railing of the body of the car? A. Yes, then the car, it seemed like it fastened on to the rope, and jerked us right across the street; that is the time I fell.

"Q. Then you fell off? A. Yes, sir.

"Q. Did she try to get off? A. I don't know."

He also says that although this lady was standing in front of him yet no one touched him. His language is:

"Q. How far did you ride on the car? A. From —what do you mean?

"Q.   From the time you got on, until you fell off?

"The Court: How far did you fall off from the place where the car started?   A.   I fell off about half way across Delaware street.

"Q.   You rode from the place where you got on to about half way across Delaware street?   A.   Yes, sir.

"Q.   That is correct, is it?   A.   Yes, sir.

"Q.   Well, where were you riding during that time?   A.   I was on the step of the car.

"Q.   Sir?   A.   I was on the step of the car.

"Q.   You were standing on the step of the car? A.   Yes, sir.

"Q.   All that time?   A.   Yes.

"Q.   And had hold of the hand rail in front of you all that time?   A.   Yes, sir.

"Q.   Well, clear up to the time that you fell off, Mr. Quinn, there was nobody touched you or interfered with you at all was there?   A.   No, this lady was in front of me?.

"Q.   Well, I asked you, Mr. Quinn, if anybody touched you, or interfered with you at all?   A.   No, sir.

"Q.   Did not?   A.   No, sir."

That plaintiff had notice of the starting of this car before it started, he concedes.   This admission eliminates that charge of negligence.   The evidence for plaintiff, as before stated, shows that the car stopped the usual time.   The evidence also shows that plaintiff had gotten to a reasonable place of safety before he fell.   He was upon the car with both feet upon the step and both hands holding to the rails, from which he could have easily reached the platform, but for his own act later, the voluntary release of his handhold, and this from a cause which is not chargeable to defendant.

Nor does the testimony show any such unusual lurch or jerk of the car as would be denominated negligence.   We all know that as the grip becomes more firmly attached to the cable there will be an increase of

the speed and that cable cars are not free from lurches thus produced. There should have been some evidence upon this point showing an unusual and negligent running of this car, to say the least. It must also be borne in mind that the cable train was crossing these tracks in Delaware street, which of itself would produce some disturbance. But after all, this evidence tends to show that the accident was the result of plaintiff's own voluntary act, which act of his was superinduced by an independent cause. We do not think that plaintiff made a case on the evidence adduced by his witnesses. The defendant's evidence tended to show that he was not on the car, but fell in an attempt to place the little boy on board the moving train. We mention this to show that the evidence of defendant did not aid plaintiff's case. Our discussion has been confined to plaintiff's evidence. The woman said she was not attempting to leave the car, but was trying to stop the car so that the child might get aboard. The signal was given and the car stopped about the time it crossed Delaware street. The plaintiff and the child both boarded the car and proceeded west. No complaint was made by plaintiff at the time as to any injury or as to the treatment of him by defendant's employees. Upon the whole we think the verdict found was the only one which could have been found by the jury, and we will not disturb it for the error above pointed out.

The judgment will be affirmed. All concur.