JOHN HURCK v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant:

Division Two, June 28, 1913.

1. **NEGLIGENCE: Carrier: Act of God: Burden of Proof: Instructions.** Defendant's train was stopped by a heavy snowstorm and was attempting to back into a near by town by ramming the snow, when the coach in which plaintiff was a passenger was derailed. His petition alleges that the car was derailed on account of defendant's negligence, and that he was injured thereby. His evidence tended to prove the charges of the petition. *Held*, that, in the circumstances, an instruction was erroneous which told the jury the plaintiff must show that the injury resulted solely from the derailment of the car, and that such derailment was due to some defect or imperfection in the track, or to some want of care and caution on the part of the trainmen. That is so because, in this case, it is immaterial whether the snowstorm was so unprecedented

or unusual as to constitute an act of God within the legal meaning of that phrase. It could not be said that the snow and ice was the sole cause of the derailment, but the derailment, as shown by the evidence, was more directly attributable to the backing or "ramming" of the train into the snow and ice, the extent and character of which was known to the trainmen at the time. Whether, therefore, the defendant had shown a condition of facts which exempted it from the presumption of negligence arising from the prima-facie case made by plaintiff was a matter for the jury's determination, and it was error to force the plaintiff to a proof of specific negligence on the part of defendant.

2. **APPEAL: "Verdict for Right Party:" Erroneous Instructions.** Unless the evidence would be insufficient as a matter of law to make out a case or a defense for the losing party below, the appellate court is not justified in saying as a matter of law that the verdict is for the right party and that hence errors in instructions given at the request of the winning party below would not work a reversal.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*James F. Green* for appellant.

(1) There was no error in giving defendant's instruction 6. Gillespie v. Railroad, 6 Mo. App. 558; Reeves v. Railroad, 77 U. S. 190; Livesay v. Railroad, 64 Pa. St. 106; Jones v. Railroad, 91 Minn. 329; Willis v. Power Co., 111 Mo. App. 580; Coleman v. Railroad, 36 Mo. App. 493. (2) Where the verdict of a jury is clearly for the right party, it should be upheld even if there should be error in the giving of instructions. Fritz v. Railroad, 243 Mo. 69; State v. Vickers, 209 Mo. 34; Trainer v. Mining Co., 243 Mo. 359; Quinn v. Railroad, 218 Mo. 561; Mockowik v. Railroad, 196 Mo. 568; Moore v. Railroad, 176 Mo. 545; Puterman v. Smith, 127 Mo. App. 514; Secs. 1850, 2082, R. S. 1909; Schuepbach v. Gas Co., 232 Mo. 611; Bradley v. Coffee Co., 213 Mo. 325. (3) All of the evidence in the case

was to the effect that the derailment of the car was due to a snowstorm, which obstructed the railroad track. This was an act of God, which excuses the railroad company. Ballentine v. Railroad, 40 Mo. 491; Davis v. Railroad, 89 Mo. 350; Shoe Co. v. Railroad, 147 Mo. App. 489; Jones v. Railroad, 91 Minn. 329; Kempton v. Railroad, 138 Fed. 997.

*Frank H. Haskins* for respondent.

(1) Defendant's instructions 2, 6 and 7 were erroneous. Lemon v. Chanslor, 68 Mo. 343; Hipsley v. Railroad, 88 Mo. 352; Estes v. Railroad, 110 Mo. App. 730; O'Gara v. Transit Co., 204 Mo. 732; Freeman v. Foreman, 141 Mo. App. 359; Wolven v. Traction Co., 143 Mo. App. 643; Goodloe v. Met. St. Ry., 120 Mo. App. 197; Price v. Met. St. Ry., 220 Mo. 435; Briscoe v. Met. St. Ry., 222 Mo. 115; Redman v. Railroad, 185 Mo. 10; Orcutt v. Century Bldg. Co., 214 Mo. 35; Price v. Railroad, 220 Mo. 463; McDonald v. Railroad, 219 Mo. 489; Gleeson v. Railroad, 140 U. S. 435. (2) The defect in these instructions was not corrected by giving a proper instruction for plaintiff. Standard Oil Co. v. Mayer, 74 Mo. App. 446; Spillane v. Railroad, 111 Mo. 565; Kansas City v. Bacon, 147 Mo. 287. (3) The derailment was not caused by an act of God. Gillespie v. Railroad, 6 Mo. App. 554; Railroad v. Manning, 23 Neb. 552; Ryan v. Rogers, 96 Cal. 349; New Brunswick S. Co. v. Tiers, 24 N. J. L. 697; Gleeson v. Railroad, 140 U. S. 435. (4) An act of God must be the sole and immediate cause independent of human agency. Merritt v. Earle, 31 Barb. 38; Parsons v. Monteath, 13 Barb. 353; Railroad v. Bell, 24 Tex. Civ. App. 579.

WILLIAMS, C.—This is an action to recover damages for personal injuries which plaintiff claims to have received while a passenger on one

of defendant's trains in the State of Kansas. Trial was had in the circuit court of the city of St. Louis, resulting in a verdict and judgment for defendant. The trial court sustained plaintiff's motion for a new trial on the ground that instruction 6, given at defendant's request, was erroneous, and defendant duly perfected its appeal to this court.

That portion of plaintiff's petition which charges negligence on the part of defendant is as follows:

"Plaintiff states that through the negligence of defendant, the coach in which plaintiff was riding as a passenger was derailed, and left the track, thereby causing plaintiff to be jerked and thrown from his seat, striking portions of the car and injuring him in such manner as to rupture him."

The petition further alleges that plaintiff was a passenger on defendant's train, and that he has suffered and will continue to suffer great pain and anguish of body and mind by reason of said injury, was rendered unable to attend to his regular duties, and has suffered and will continue to suffer great loss of earnings, and that he is permanently injured to the extent of $10,000, for which sum he asks judgment.

The evidence on the part of plaintiff tends to show the following facts: On February 18, 1908, at about 8:30 a. m., at Jamestown, Kansas, plaintiff became a passenger on and boarded one of defendant's trains to go to Jewel City, Kansas. At the time there was a heavy snow on the ground, considerable snow was falling, and a high wind blowing. After the train had gone a distance of about four miles it became stalled in a snow bank, and remained there until about 4:30 p. m., when a gang of twenty or thirty men came and began shoveling the snow off the track behind the train. The train crew, believing it impossible, on account of the snow, for the train to proceed further, determined to back the train to Jamestown. Plain-

tiff testified that after the men would shovel a while
the train would be caused to back and "buck up against
the snow," and in that manner push its way towards
Jamestown.  The train consisted of an engine, one
freight car, containing a water tank with an extra sup-
ply of water for the engine, and a combination coach
containing compartments for baggage, mail and pas-
sengers.  The passenger compartment was at the rear
end of the coach, which however, constituted the front
end as the train backed towards Jamestown.  There
were twelve or fifteen passengers on the train.  Plaintiff
further testified that in the manner above described
the train backed a distance of two or three miles, that
it was then about eight o'clock p. m., and most of the
shovelers refused to work longer, and that he expected
the train to remain there all night; that he was sitting
on the right hand side of the coach, facing James-
town, and had fallen asleep, when he was awakened
by being thrown against either the back of the seat or
the window-sill, and that when he got up he felt a pain
in his lower abdomen, lasting about five minutes; that
his being thrown in the above manner was occasioned
by the derailment of the wheels of the truck nearest
Jamestown; that said derailment left the right side
of the coach upon which plaintiff was seated two or
three feet lower than its opposite side; that after the
accident plaintiff put on a pair of leggins, wrapped
himself up, and, with several other passengers, walked
through the deep snow from the place where the coach
was derailed to Jamestown, a distance of about a
mile and a half.  When the derailment occurred the
snow had stopped falling and the wind had allayed.
The accident happened on Tuesday, and on the fol-
lowing Saturday night plaintiff first examined himself
and discovered an injury in the form of a lump on the
left side of the lower abdomen.  He made no statement
to any of the passengers either the day of the derail-
ment or the next that he had been injured by the de-

railment. About eleven days after the derailment plaintiff returned to St. Louis, his home, and called upon a physician for treatment. The doctor prescribed the use of a truss, and advised plaintiff not to do any heavy work in the way of lifting. That by reason of the injury he was unable to perform his usual work, which was that of motorcycle repairing, that his services were worth about eighteen dollars per week, and that his loss of wages had continued up to the time of the trial. It also developed from the cross-examination of plaintiff that he carried two accident policies at the time, each policy providing for a weekly indemnity for partial debility of $12.50 per week, and that he settled with one accident company for sixty dollars, and with the other for seventy-five dollars.

Plaintiff's physician, Doctor Dorsey, testified that when he first examined plaintiff, the latter part of February, 1908, he found him suffering from inguinal hernia, that the same might have been produced by a blow such as plaintiff claimed he received by being thrown against a car seat or window-sill, and that usually a patient cannot tell when hernia first occurs, and might not know of it for some time afterwards; that the injury would be permanent unless cured by surgical operation. Plaintiff testified that he had not been afflicted with hernia or rupture prior to the day of the derailment.

Defendant's evidence tended to show that the snowstorm referred to was what was known as a "Kansas blizzard," and that at the time the train left Jamestown the conductor had some doubts about being able to get the train through on the trip; that the day was cold, and the snow became frozen soon after falling. One of defendant's witnesses, Rev. Bennett, testified that the snowstorm was not extraordinary, but that they have lots of storms like that out there.

Defendant's testimony contradicted plaintiff's testimony with reference to the force of the jar caused

by the derailment of the coach. The conductor testified that at the time of the derailment he was outside, walking along by the side of the coach, and that he had a lantern in his hand for the purpose of signaling the brakeman who had charge of the air-brake, and that the train was pushing back at the rate of about three miles an hour; that the snow and ice accumulated to such an extent under the wheels that the wheels were lifted so as to permit their leaving the rails; that when they left the rails he signaled the brakeman to apply the air, and that the train was stopped within a few feet, and that the derailment caused very little jarring.

Five or six of the passengers testified for defendant to the effect that the jerk or jar caused by the derailment was not sufficiently severe to cause a man standing up in the car to be thrown down, or to cause a man sitting down to be thrown out of his seat, and that they did not see anybody thrown down while standing, or thrown from their seats. One witness for defendant, however, testified that the jar raised her off her seat, but that by grasping the seat in front of her she was enabled to regain her position. Another witness for defendant testified that he was standing up when the derailment occurred, and that to the best of his recollection he had to hold on to the seat to keep from falling.

The depth of the snow at the place of derailment, as fixed by defendant's witnesses, varied all the way from two to nine feet. It seems there was a railroad cut at that point, and that the snow drifted considerably, thus increasing its depth in the cut. Some of defendant's witnesses testified to the effect that they were "butting" or "ramming" the snow drift with the coach when the derailment occurred; that the train would be pulled forward about a hundred feet and then backed or rammed into the snow bank with considerable force.

Three physicians and surgeons testified that they had never known of hernia to be produced by jars from wrecks, or by blows on the abdomen such as plaintiff claimed he received. They testified that hernia is generally due to hereditary weakness of certain portions of the abdominal structure, and on cross-examination said that where such condition existed a blow or strain might aid in bringing on hernia.

I. The trial court granted plaintiff a new trial on the ground that instruction 6, which **Instructions.** it had given at the request of defendant, was erroneous. Said instruction is as follows:

"The jury are further instructed that the burden of proof in the case is upon the plaintiff, to show to your satisfaction that the injury alleged to have been sustained by him resulted solely from the derailment of the car in which he was riding, and that such derailment was due to some defect or imperfection in defendant's track, or to some want of care and caution on part of defendant's employees in charge of and operating the train; and, unless you find that such facts have been established by a preponderance or greater weight of the evidence, your verdict must be for defendant."

Appellant contends that said instruction was properly given, and that the court therefore erred in granting the new trial.

Plaintiff's petition charges general negligence. The petition alleges that he was a passenger on defendant's train, and that while such passenger the coach in which he was riding was, through the negligence of defendant, derailed, "thereby causing plaintiff to be jerked and thrown from his seat, striking portions of the car and injuring him in such a manner as to rupture him." Plaintiff's evidence tended to prove the charges of the petition, and under the general rule such a situation made out for plaintiff a

prima-facie case, and cast upon deefndant the burden
of explaining away the presumption of negligence thus
arising, by showing that the derailment was caused by
something without or beyond the control of defendant,
or by "an accident which the utmost skill, foresight
and diligence (on the part of defendant) could not
have prevented." [Lemon v. Chanslor, 68 Mo. 354;
Hipsley v. Railroad, 88 Mo. 348; O'Gara v. Transit
Company, 204 Mo. 724, l. c. 752; Price v. Railroad, 220
Mo. 435.]

It will be noticed that the instruction above set
forth cast upon plaintiff not only the burden of prov-
ing that the alleged injury resulted solely from the
derailment of the car, which as to that point was
proper, but also the burden of proving that "such de-
railment was due to some defect or imperfection in de-
fendant's track, or to some want of care and caution
on the part of defendant's employees in charge of and
operating the train." Learned counsel for appellant
do not attack the above stated general rule as to the
*onus probandi* in such cases, but contend that the facts
involved in the present case create an exception to the
above general rule, and place the burden upon plain-
tiff as by said instruction declared. More particularly
stated, appellant's contention is this: That the facts
disclosed by the testimony of the witnesses both for
plaintiff and defendant show that the sole cause of the
derailment was the great mass of snow and ice which
had accumulated upon the track during the violent
blizzard, which appellant contends was of such a na-
ture as to be in the legal sense denominated an "act
of God," and that this being true, the presumption
arising from plaintiff's prima-facie case is explained
away, and the burden is then upon plaintiff to prove
specific negligence. We find no fault with appellant's
proposition with reference to the abstract principles
of law contained therein. The same is firmly sup-
ported by the authorities. [Gillespie v. Railroad, 6

Mo. App. 554, l. c. 558; Davis v. Railroad, 89 Mo. 340; Memphis & Charleston Railroad v. Reeves, 77 U. S. (10 Wall.) 176, l. c. 189-190, and many other cases not necessary to cite herein.] In the case of Memphis & Charleston Railroad v. Reeves, supra, the court said:

"It is hard to see how the soundness of this proposition can be made clearer than by its bare statement. A common carrier assumes all risks except those caused by the act of God and the public enemy. One of the instances always mentioned by the elementary writers of loss by the act of God is the case of loss by flood and storm. Now, when it is shown that the damage resulted from this cause immediately, he is excused.

"What is to make him laible after this? No question of his negligence arises unless it is made by the other party. It is not necessary for him to prove that the cause was such as releases him, and then to prove affirmatively that he did not contribute to it. If, after he has excused himself by showing the presence of the overpowering cause, it is charged that his negligence contributed to the loss, the proof of this must come from those who assert or rely on it."

The above stated exception to the general rule is, it will be seen, wholesome doctrine, for if either by plaintiff's own evidence or by the evidence offered by defendant it appears that the unusual happening (which by its very nature raises the presumption of negligence) was caused solely by *vis major*, or by any other instrumentality disconnected from any negligence of defendant, the presumption is undermined and falls and no case is made, and in that situation the plaintiff must fail unless he goes forward with evidence showing specific negligence.

The determination of the question involved here, then, depends upon whether the above stated exception is applicable to the facts of this case. Did the evidence either of plaintiff or defendant show that the

derailment occurred solely by "act of God," or by any agency disconnected from any act of negligence on the part of defendant? Plaintiff's evidence does not undertake to explain how the derailment occurred. It is true, he testifies that a snowstorm was in progress at the time, but as to how the derailment in fact occurred his evidence is silent. In that regard plaintiff offered no testimony save his own, and he testified that he was asleep when the derailment occurred. The evidence on the part of defendant tends to show that the derailment resulted from pushing or "ramming" the end of the caoch and forward wheels against and over the snow and ice which had accumulated on the track, and that the agents of defendant operating the train had knowledge of the bulk and extent of said snow and ice mass when they attempted to "butt" or push the coach through or over same. It is therefore immaterial whether the snowstorm was so unusual or unprecedented as to be denominated an act of God within the legal meaning of that phrase. It could not be said that the snow and ice was the sole cause of the derailment, but the derailment, as shown by the evidence, is more directly attributable to the backing or "ramming" of the train into the snow and ice mass, the extent and character of which was known to defendant's agents at the time. Whether, therefore, the defendant had shown a condition of facts which exempted it from the presumption of negligence arising from the prima-facie case made by plaintiff, was a matter for the jury's determination. In the case of Davis v. Railroad, 89 Mo. 340, l. c. 350, the court said:

"If, therefore, plaintiff shows delivery of his goods to the carrier, and a subsequent loss thereof, he need do no more. This is a sufficient statement, ordinarily, of his cause of action, and a showing to that effect is sufficient to make out a prima-facie case. The *onus probandi* is then on the carrier to bring the case

within one of the other of said exemptions. If, in establishing his said defense, facts and circumstances also appear tending to show that his negligence co-operated to produce the damages he must, we think, bear the burden of satisfying the jury that they did not directly contribute to the damage, and he is not relieved of liability unless he so shows. In other words, when the burden is cast on him, he must make a case in which no negligence of his own appears from the evidence. In that event, he is excused prima-facie, unless plaintiff then shows, or it appears from the facts in the case, that his negligence causes or co-operates to produce the damage complained of.''

In the case of O'Gara v. Transit Company, supra, the plaintiff was injured by reason of the derailment of a street car upon which she was a passenger. The evidence showed that the derailment was caused by the car wheel running over a brick which had been placed on the track by some children. The defendant company interposed a demurrer to the evidence, which was refused by the court, and the refusal was assigned as error on appeal. This court held that the demurrer to the evidence was properly refused. Judge Gantt, speaking for the court, said:

"The plaintiff having made a prima-facie case, the burden devolved upon the defendant of showing that the derailment of its car was caused by the tortious act of the boy, and if it could establish that plaintiff's injury was *caused solely* by the act of the boy or some third person placing the brick upon the track, then it must have shown the good legal excuse for the exemption from liability.'' (L. c. 734, italics ours.)

Then, after a discussion of facts and authorities, he further said:

"While the defendant cannot be held for the tortious act of the little boy in placing the brick upon its track, if its motorman could not have discovered it by that high degree of diligence and care which every

careful railroad employee would have exercised in the same or similar circumstances, still if by the exercise of such care its motorman could have discovered the brick upon the track in time to have averted a derailment of the car, then the law holds the defendant liable for the failure of its servants to exercise such care." (L. c. 737.)

Said instruction 6, by casting upon plaintiff the burden of showing specific negligence, was sufficiently misleading to cause the jury to find for defendant, for the jury would remember that the plaintiff had not proven any specific act of negligence. As was well said by Judge GRAVES, in Price v. Railroad, 220 Mo. 1. c. 463, in discussing the effect of an instruction casting the burden of proof upon the plaintiff where the rule of *res ipsa loquitur* applied: "Such an instruction has no place in a case where the doctrine of *res ipsa loquitur* is applicable. It destroys every vestige of the doctrine of presumptive negligence."

The facts disclosed by the evidence in the present case were not such as to show that the derailment was caused solely by instrumentalities beyond the control of defendant, or disconnected from defendant's negligence, and the burden remained with defendant to overcome the presumption arising from the primafacie case made by plaintiff, and it follows that it was error to place upon the plaintiff the burden of showing specific acts of negligence.

II.   Appellant next contends that the verdict of the jury was for the right party, and that where that is true the verdict "should be upheld even if there should be error in the giving of instructions;" citing Trainer v. Mining Co., 243 Mo. 359; Quinn v. Railroad, 218 Mo. 545, and like cases. With regard to this contention it is suffcient to say that, unless the evidence would be insufficient as a matter

"Verdict for Right Party:" Error in Instructions.

Hurck v. Railroad.

of law to make out a case or defense for the losing party below, the appellate court is not justified in saying as a matter of law that the verdict is for the right party, and that hence errors in instructions given at the request of the winning party below would not work a reversal. The correct rule in that regard is stated by LAMM, J., in Trainer v. Mining Co., supra, as follows:

"The logic of the matter, then, is that if on the facts of the record a court can say *as a matter of law* that the end reached at the trial was the only end that could be rightly reached, plaintiff cannot be injured (within the meaning of that word in the law) by improper testimony or too favorable instructions for defendant. . . . In establishing a working theory in the premises, the stiff rule has come to be: No case for plaintiff, no merits or substantial rights. No merits or substantial rights, no reversible error of which plaintiff can complain." (L. c. 371.)

In the present case, we cannot say as a matter of law that had the jury rendered a verdict in favor of plaintiff, it would have been without evidence sufficiently substantial to sustain it. When this is true, it is for the jury and not the court to determine the issues of fact, and it matters not what our personal view might be in the matter, or what would be our conclusion in the matter were we acting as jurors.

The proper placing of the burden of proof was a matter of vital importance in the trial contest, and the instruction as given in effect destroyed the force of the rule of *res ipsa loquitur*, which rule, under the facts, plaintiff had the right to invoke.

The judgment is affirmed, and the cause remanded for new trial. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. All of the judges concur.