## JAMES G. BROWN et al., Appellants, v. JOHN W. BROWN et al.

### Division One, November 29, 1911.

1. **CONVEYANCE: Coercion: Finding: Deference to Chancellor.** The Supreme Court would not disturb the finding of the chancellor on the issue of coercion if the evidence were evenly balanced. But where the grantor conveyed her home place to a son, reserving a life estate and rented the place to tenants for $500 a year, and for seven years lived in respectable families apart from the son, and told her tenants to consult him about the improvements, as the farm belonged to him, there does not seem to be any room for a finding that the son obtained the deed through coercion.

2. ————: **Undue Influence: Fiduciary Relation: Presumption.** A fiduciary relation between the grantor and grantee raises the presumption of undue influence. But such presumption may be rebutted by the evidence, including the facts and circumstances. Presumptions as to facts always take flight upon the appearance of the facts themselves.

3. ——: ——: ——: ——: **Parent and Son.** Good treatment of a son towards an old mother is not an influence which the law condemns. Nor does it have much weight with a court when it is asked, to set aside a deed to him, by her other children who had become estranged to her and did not visit her for the seven or eight years she lived apart from that son.

4. ——: ——: ——: **Rebutting Facts.** The grantor was of sound mind, was strong-willed, and well treated by the two younger boys who remained with her for several years after her husband's death, and utterly ignored by her older children, who charge that her deed to them, by which she reserved a life estate for herself, was the result of undue influence. She was fifty-seven years of age when the deed was made, and lived twenty-one years thereafter, and the last seven or eight years of her life in reputable families apart from the grantees. She had been urged by the other children, from whom she had become estranged, to make an equal division between all the children. The deeds were recorded, and she made no attempt to have them annulled, but told the tenants that the lands belonged to the sons, and that they should be consulted about the improvements. *Held*, that, assuming that a fiduciary relation existed between her and them, any presumption of undue influence was overcome by the facts.

Appeal from Randolph Circuit Court.—*Hon. E. W. Hinton,* Special Judge.

AFFIRMED.

*B. R. Dysart, J. H. Whitecotton* and *W. P. Cave* for appellants.

(1)   The court should have sustained plaintiff's bill and set aside and declared null and void the deed in controversy, under all the evidence in the case. The law of the State recognizes no principle of law with more certainty than that where one stands in the relations of trust and confidence with another who is old and failing in mind and body, the law will presume a contract between them to have been the result of undue influence emanating from the stronger party. And when a deed is made under such circumstances as the deed was made in this case, the same, in a court

of equity, will and should be set aside. If in such case any advantage is gained by the grantee, undue influence on his part is presumed and this must be overcome by testimony in rebuttal or the deed must fail. Cadwallader v. West, 48 Mo. 483; Martin v. Baker, 135 Mo. 495; Dingman v. Romine, 141 Mo. 466.

*Aubrey R. Hammett* for respondents.

GRAVES, P. J.—Benjamin Brown died on May 27, 1884, leaving surviving him his widow, Rachel Catherine Brown, his children, James G., John W., Sam B. Brown, Janairia I. Stokes, Millie K. Gaines, and his grandchildren, Ben and Cooper Sims and Catherine Haines, children of a deceased daughter.

In his lifetime, Benjamin Brown owned in fee 200 acres of land in Randolph county. He and his wife as tenants by the entirety owned 327 acres more adjoining, and this last mentioned tract is the one involved in this suit. Prior to the death of Benjamin Brown all of his children had married and moved to their own homes, with the exception of John and Sam, the two youngest boys. In about three years after the death of the father the son Sam married and moved away. During the first three years succeeding the death of the father, Sam and John purchased the interests of the other heirs in and to the 200-acre tract above mentioned. The interests of the several heirs were fixed by the will of Benjamin Brown. On the 20th day of March, 1887, Rachel Catherine Brown conveyed the home place of 327 acres to defendant John W. Brown, retaining to herself a life estate therein. At about the same time John W. Brown conveyed to Sam B. Brown all his interest in the 200-acre tract. The widow, Rachel Catherine Brown, likewise at the same time made a deed to Sam B. covering the 200-acre tract. Under the will of the husband she had a life estate in this tract. The estate of Benjamin Brown,

although not done promptly, was finally administered upon by the widow·as executrix under the will. After John W. moved from the farm the widow remained there some two or three years and then moved to a near-by town, where she boarded for five years and until the date of her death in 1908.

The plaintiffs, who are the heirs of Rachel Catherine Brown, before mentioned, with the exception of John and Sam, who are defendants, by bill in equity seek to have the deed of March 21, 1887, conveying the home place to John, set aside and cancelled and also ask that the said John be required to account for the rents and profits of the land from and after the death of their mother. The grounds upon which the bill seeks the cancellation of this deed are (1) mental incapacity, (2) false and fraudulent representations, (3) undue influence and (4) coercion. The pleader in the bill clusters around these grounds a mass of supposed facts, stating them in detail, but the gist of the bill is covered as above stated. John Brown answered denying all material allegations of the bill. Sam Brown did not answer.

Trial in the circuit court resulted in a finding of the issues for the defendants, and the dismissal of plaintiffs' bill. After the filing and overruling of motion for new trial, plaintiffs duly perfected their appeal to this court.

The only assignment of error urged is that the court erred in deciding the issues in favor of the defendant and in dismissing plaintiffs' bill in equity.

I. It is urged that the grantor was mentally incapacitated to make the deed in question. The plaintiffs' evidence upon this question tended to show that in 1881, the grantor in this deed, Mrs. Brown, suffered from a paralytic stroke, and was thereafter physically and mentally weak. This evidence, with but slight exceptions, comes from plaintiffs alone. Their testi-

mony is quite damaging upon all the grounds stated. In many instances it is so strong as would excite suspicion as to its verity. By the plaintiffs, Mrs. Brown is made a nervous wreck after this alleged stroke of paralysis. On the other hand, however, her neighbors and friends of many years' standing were called. Her several attending physicians were called, and none of them observed any evidence of a paralytic stroke. The overwhelming evidence is that whilst physically Mrs. Brown was not what might be called a robust woman, but on the contrary was rather frail, yet she was a woman possessed of a sound business mind, and rather inclined to hold out to the last for her views of a situation. Upon the question of mental capacity, the chancellor *nisi* could not have done otherwise than find as he did. He was, under the evidence, forced to find that she was possessed of full mental capacity at the making of this deed.

II. Upon the question of coercion the testimony is, to say the least, conflicting. Defendants testify positively that there was none, and plaintiffs testify to some circumstances which might be said indicated that there was such action upon the part of defendants. In this, too, their testimony would appear to be largely overdrawn. The whole family seemed to be possessed of some temper, and plaintiffs appear much overwrought in their demeanor upon the witness stand. None of them visited their mother after the year 1887. About that time an inventory was taken of the father's estate by the mother, and the plaintiffs openly charged the mother with making a false inventory. The father had by his will cut out the grandchildren for the reason, as stated in a codicil to the will, that he had given their mother all of his estate that he intended to go to her. The plaintiffs insisted on their mother ignoring the will and dividing the estate between them all equally. It would seem that at least

part of the plaintiffs were of the impression that the whole 527 acres of land belonged to the estate, but on the taking of the belated inventory the real situation was discovered. This seemed to be a source of irritation. The chancellor *nisi* could observe the witnesses much better than we, and we would be loath to disturb his finding even upon evenly balanced testimony. We are not prepared to say that upon the question of actual coercion the testimony is evenly balanced. On the contrary we think not. The conduct of their mother afterward does not bear out such an idea. For at least seven years prior to her death she lived to herself. She boarded in reputable families, and had she been forced to make a deed, she could easily have taken steps to have had it annulled. Instead of doing so, she rented her farm year after year for $500 per year, and several times told the tenant that the farm belonged to John W. at her death, and that the tenant should consult him as to how the farm should be worked. This and many other circumstances in the record do not bespeak coercion. Defendants contend that plaintiffs so harassed their mother about selling the farm and dividing the proceeds, that she finally concluded that it was best to do as she did do for her own good. They say that what was done was done upon the initiative of the mother. That the mother suggested that if John W. would deed his interest in the 200-acre tract to Sam B., she would make John W. a deed to the 327 acres, reserving to herself a life estate for her own independent support and maintenance. But, be that as it may, for the point now under consideration it must be said that the evidence is ample to sustain the finding of the lower court upon the question of coercion. And what is said of this ground may with equal propriety be said of the alleged false representations. There is even less basis in the record for that charge.

III.   Nor was there error upon the part of the trial court in finding that the deed in question was not the result of undue influence exercised over the mind of the grantor by the defendants or either of them.   The evidence is not as clear as it might be as to the business relations between the mother and the two defendants whilst they were running the farm during the three years that intervened between the death of the husband and the making of the deed involved in this suit.   We shall discuss the case upon the theory that a fiduciary relation is shown by the testimony, and thus obviate a review of the fragmentary evidence bearing upon that question.   Such fiduciary relation only raises the presumption of undue influence.   This presumption can be rebutted by the evidence, including the facts and circumstances in evidence.   We are cited by the plaintiff to the cases of Cadwallader v. West, 48 Mo. 183; Martin v. Baker, 135 Mo. 495, and Dingman v. Romine, 141 Mo. 466.   We are familiar with the doctrines announced in those cases.   In fact, the writer was of counsel in the latter case.   These cases announce the general rule of law in this as well as other jurisdictions upon the question of fiduciary relations, but as said above, we shall not only recognize the rule, but shall conclude that there was such a relation in this case.   We then have left the question, whether the evidence for the defendants was such as to overcome the case made by the plaintiffs, including the presumption.   Presumptions as to facts always take flight upon the appearance of the facts themselves.   Was the chancellor *nisi,* the Hon. E. W. Hinton, sitting specially in this case, justified in his conclusions of facts as to the non-existence of undue influence?   We think so.   First, the great weight of proof shows (1) that the grantor was of sound mind, (2) that she was a strong-willed woman, and (3) that she was well treated by the two boys who remained with her for some years, and utterly

ignored by the plaintiffs. It is true that plaintiffs say that they did not visit their mother because of the unseemly and harsh conduct of the two younger brothers, but this story is not plausible when we consider that the latter seven or eight years of her life the mother lived alone, and yet they visited her not. It is clear from the evidence that these parties were estranged, and it is as likely due to the conduct of the plaintiffs as to any other cause. They accused her of making a false appraisement of their father's estate. They urged her not to accept the will as made by the father, and after the sale of the father's property in the course of the administration of his estate, they made no attempt to visit the mother even though they knew she was away from defendants, and according to their testimony weak both physically and mentally.

Under the law, the land in question was the mother's. She had a right to do with it as she pleased. It is more than probable under the facts that she had been well treated by the younger boys and felt closer to them. Good treatment from a son toward an old mother is not an influence which the law condemns.

But going further the acts of undue influence are denied and the circumstances seem to rebut them. First, the deed was made and immediately recorded, so that there were no dark-lantern steps upon the part of John W. Brown. Likewise were the brother's deeds made about the same time recorded. The deed had stood for twenty-one years when the grantor died. She was fifty-seven when she made it and seventy-eight when she died. The last seven or eight years of her life she was not living with either of the defendants. She attended to her own business up to the time of her death. During these years her physicians and her neighbors say she was all right mentally. Had she been wronged into the making of this deed, she would have no doubt attempted to rectify it, and especially is this true when it is further considered that the plain-

tiffs had urged an equal division of the property. To her tenants she declared truthfully what had been done. She was far from being in the situation of the parties named in the cases to which we are referred by plaintiffs' counsel. She was neither mentally nor physically as were those parties. She had evidently reached the conclusion that she had been wronged by plaintiffs. She no doubt smarted under the accusation of being false to her trust as executrix of her deceased husband's estate. Upon the whole, the record amply justifies the finding of the learned chancellor *nisi,* as to the absence of undue influence.

This covers the questions of the case. The judgment of the circuit court is for the right party and is therefore affirmed. All concur.