## ANNIE V. PARTELLO v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### In Banc, February 9, 1912.

1. **JURY: Reading Non-Prejudicial Newspaper Article.** Two of the jurors while the trial was pending had read an article in a newspaper beginning: "A $50,000 suit up again. The Partello case in court for the second time. A jury's verdict of $30,000 against the Missouri Pacific was excessive, even the plaintiff admitted—Supreme Court remanded it." *Held,* that this part of the article was more prejudicial to plaintiff than to the defendant railway company, and the court did not err in overruling defendant's motion, made while the trial was in progress, to discharge the jury.

2.  ————: ————: No Effort to Show Prejudicial Effect. Where
appellant by an inquiry of the jurors while the trial was in
progress, ascertained that two of them had read a newspaper
article relating to the case, and then moved to discharge the
jury for misconduct, without any attempt to show that they had
formed an opinion therefrom that had or would influence them
in making up their verdict, the action of the court in overruling
the motion must be considered in the light of the facts at the
time it was made, and not as if the conduct of the jurors were
presented for the first time in the motion for a new trial. It
would be unfair to permit a party to take the chance of a favor-
able verdict and failing in obtaining that to claim the existence
of prejudice on the part of jurors, which he failed to show
when he had an opportunity.

3.  INSTRUCTION: Considered on Former Appeal: Stare Decisis.
The correctness of an instruction approved on a former appeal
in the same case will not be considered on the second appeal.
Having been approved then it became the law of the case, and
will not be again considered.

4.  NEGLIGENCE: Passenger: Collision: Presumption of Negli-
gence. Where the relation of passenger and carrier, a collision
and the consequent injury of the passenger are shown, the law
raises the presumption that the injury was the result of the
carrier's negligence, and therefore it is not error, when those
facts are shown, to instruct the jury that "the law presumes
that such injury to plaintiff was caused by defendant's negli-
gence."

5.  ————: Argument to Jury: Appeals to Sympathy and Preju-
dice: Based on Record. An attorney in addressing the jury
does not go beyond the bounds of legitimate argument and is
not guilty of misconduct if, basing his remarks on the facts
in the record, and using dignified, decorous and decent language,
he appeals to the sympathy of the jury, or condemns the motives
of defendant's defenses, or appropriates to himself and expresses
the prejudice of his client towards defendant arising out of the
case. It was not misconduct on the part of plaintiff's attor-
ney to state to the jury that it was a very serious charge to say
that plaintiff had been living the life of an impostor and had,
in addition to her sufferings, with uplifted hand before God,
committed perjury, as defendant tried by its evidence to show,
and thereby added gross insult to injury, if plaintiff had in
fact been sorely and permanently injured, as she testified.

6.  EXCESSIVE VERDICT: $30,000: Second Trial: Reduced to
$10,000.  Plaintiff, a passenger on a railroad train, was injured
by a collision.  Prior to her injuries she was an active, sound,
vigorous woman, in perfect health, the mother of children, in
a high station in life; as a result of the collision, her womb

was displaced, she was a great sufferer for many months, and a helpless invalid, and at the time of the second trial, five years later, a physical and nervous wreck, never free from pain and still suffering from her injuries. At the first trial, one year after the accident, the jury returned a verdict of $30,000, of which amount she voluntarily remitted $10,000. On appeal the judgment was reversed on the ground that the verdict could not be accounted for on any other theory than passion or prejudice. At the second trial the evidence was the same, except it tended to show that during the four years since the first trial she had continued to suffer, could eat no solid foods and could not sleep except when under the influence of opiates. The verdict was again for $30,000, and on the second appeal this is *held* excessive by $20,000. [KENNISH and BROWN, JJ., dissenting.]

*Held*, by KENNISH, J., dissenting, that an appellate court cannot, without usurping the province of the jury, hold that two verdicts, for practically the same amount, on the same state of facts, were both the result of the passion and prejudice of the jury; and that the only ground on which the court can legitimately reduce this second verdict for $30,000 to even $20,000 is the fact that plaintiff at the first trial by her voluntary remittitur reduced it to that sum.

Appeal from Jackson Circuit Court.—*Hon. W. A. Powell*, Judge.

AFFIRMED (*conditionally*).

*Martin L. Clardy, Robert T. Railey, Edward J. White* and *Thomas L. Philips* for appellant; *Elijah Robinson* and *Harris Robinson* of counsel.

(1) As shown by the result, the fact that the jurors read the article in the "Star" showing the amount of the former verdict, was prejudicial to the defendant and the court should have discharged that jury, as requested by defendant's counsel, and impaneled a new jury to try the case. Gibney v. Transit Co., 204 Mo. 704. (2) The court erred in referring to the former opinion of the Supreme Court, in the presence of the jury in passing on the defendant's objections to evidence; the court erred in refusing to discharge the jury after it came to the court's attention

that some of the jury had read newspaper articles, giving the amount of the former verdict and in refusing to exclude from the consideration of the jury, counsel's statement that the defendant, "came here four years ago, and they come again today in this trial, to add gross insult to the injuries they have done her." Neff v. Cameron, 213 Mo. 350; Railroad v. Roberts, 187 Mo. 389; Railroad v. Pfau, 212 Mo. 398; Padgett v. Railroad, 159 Mo. 154; Devoy v. Transit Co., 192 Mo. 197; Green v. Railroad, 211 Mo. 18; People v. McCoy, 71 Cal. 395; Wendler v. Furnishing Co., 165 Mo. 527; Gibson v. Zeibig, 24 Mo. App. 65. (3) The court erred in giving the third instruction for plaintiff and in telling the jury that the law presumes that the injury to the plaintiff was caused by the defendant's negligence and that the establishment of such fact, made out a prima facie case for the plaintiff. Bailey v. Railroad, 152 Mo. 449. (4) The verdict in the case was so grossly excessive as to show conclusively that the jurors were influenced by prejudice against the defendant or sympathy for the plaintiff, and that their verdict was not the result of a fair and impartial consideration of the evidence in the case, and for that reason the judgment ought to be reversed. Baker v. Stonebraker, 36 Mo. 338; Spohn v. Railroad, 87 Mo. 84; Ice Co. v. Tamm, 90 Mo. App. 202; Adams v. Railroad, 100 Mo. 555; Cook v. Railroad, 94 Mo. App. 425; Whalen v. Railroad, 60 Mo. 323; Adams v. Railroad, 100 Mo. 555; Nichols v. Glass Co., 126 Mo. 55; Furnish v. Railroad, 102 Mo. 438; Chitty v. Railroad, 166 Mo. 435; Gibney v. Transit Co., 204 Mo. 704; Waddell v. Railroad, 213 Mo. 20; Dean v. Railroad, 229 Mo. 425.

*Reed, Yates, Mastin & Harvey* for respondent.

(1) The law of this case has been fixed by the former appeal. The instructions upon this trial and upon the former trial are *verbatim et literatim.* No objections to testimony are raised. Every question of

law in the case as to evidence and instruction is conclusively settlad by that opinion. While counsel seem to desire to reopen some of these questions, we understand the law to be that the opinion on the former appeal is *res adjudicata*. The law of the case is in Partello v. Railway, 217 Mo. 645. (2) The article printed in the Kansas City Star, dealing with the progress of the trial, could not have been prejudicial to the defendant. Counsel cite no authorities as to the effect of newspaper articles read by a jury during trial. Copeland v. Wabash, 175 Mo. 679. (3) The fact that two juries have tried this case and have each returned a verdict for the sum of $30,000 should be sufficient to convince the court that the plaintiff is most seriously injured. Our courts are not disposed to turn an. obliging ear to the claim of excessive damages and passion and prejudice on the part of the jury upon a second appeal. Cases are rare indeed where a new trial has been awarded because of excessive damages after a second verdict. Porter v. Railroad, 71 Mo. 83; Loker v. Railroad, 94 Mo. App. 484; Goetz v. Ambs, 27 Mo. 134; Day v. Dry Goods Co., 114 Mo. App. 487. "The verdict of two juries, practically the same, ought to be conclusive of the case." Loker v. Railroad Co., 94 Mo. App. 485; Baker v. City of Independence, 93 Mo. App. 165. The verdict was not excessive. The total loss of health by injuries which at once convert a healthy person into a permanent invalid cannot be compensated for by the payment of $30,000. Corby v. Tel. Co., 231 Mo. 417.

KENNISH, J.—This case is an appeal from a judgment of the circuit court of Jackson county. The respondent is the wife of Major Partello of the United States Army. On the 9th day of October, 1904, respondent, with her husband and children, was a passenger on appellant's train running from Kansas City, Missouri, to Ft. Leavenworth, Kansas. As the

train was passing over the terminal tracks leaving
Kansas City, the engine collided with an engine upon
a switch track, moving in the opposite direction. The
collision caused the train to stop suddenly, throwing
the passengers violently forward. The respondent's
head and body struck against the back of the seat im-
mediately in front of her. The blow and shock ren-
dered her unconscious and she was removed on a
stretcher, through a window of the car, and taken to
the hospital for treatment. This suit was brought to
recover damages in the sum of fifty thousand dollars
for the injuries thus sustained. Upon a trial a jury
returned a verdict for thirty thousand dollars. The
defendant filed a motion for a new trial alleging,
among other grounds, that the verdict was excessive.
Before the court passed upon the motion the respond-
ent remitted ten thousand dollars of the amount of the
verdict thus secured. The motion was then over-
ruled and a judgment rendered for the plaintiff in the
sum of twenty thousand dollars. The defendant ap-
pealed to this court. On that appeal this court re-
versed and remanded the cause for a new trial on the
ground that the verdict was excessive, notwithstanding
the remittitur entered. The case was tried a second
time and a verdict returned for the same amount as
on the first trial, to-wit, thirty thousand dollars. The
defendant again appealed, and the case is now before
us for decision upon appellant's second appeal.

The decision of this court on the first appeal is
reported in 217 Mo. 645, and a detailed statement
of the facts will there be found. As it is conceded on
this appeal that the testimony on both trials was sub-
stantially the same, reference is now made to the opin-
ion on the former appeal for a full statement of the
facts, which need not be repeated. However, as it is
earnestly contended by appellant that, "the record
in the present case discloses no injury or damage to the
plaintiff other than the bleeding at the nose and

temporary shock occasioned by the collision and blow upon the nose, to which the collision of October 9, 1904, bears any necessary or causal connection whatsoever; the record is barren of credible or competent evidence, either that there was any falling of the plaintiff's womb at or immediately following the time of the accident, or that the condition of the plaintiff's womb and ovary with which she suffered subsequent to 1904 was occasioned by or in any manner whatsoever connected with the collision of October 9, 1904,'' the following facts as to plaintiff's injuries are taken from the case as reported in the former decision of this court:

"Plaintiff was removed through the car window on a stretcher and taken to St. Joseph's Hospital, she being at the time in an unconscious condition. Describing her condition, after she regained consciousness, she said, 'I felt as though I was hurt in some way in my lower parts and could not move them.' Dr. Fulton and Dr. Hamel, two surgeons connected with the defendant railway company, came to see plaintiff on the day of the injury and administered strychnine, and put her womb back in place, Dr. Fulton forcing it back in place with a pack.

"Miss Carrico, the nurse who waited on plaintiff at the hospital, testified that when plaintiff came to the hospital she was in great pain and continually asked for something to relieve her. She saw Dr. Fulton examine plaintiff and force back her womb by means of a pack saturated with ichthyol oil. The doctors also applied antiphlogistine to the lower part of her abdomen, on the right side, which was greatly swollen, and this treatment was continued for weeks. During plaintiff's stay at the hospital she was unable to sleep without the aid of an opiate, and she suffered from nervousness and nausea. She failed in flesh and during the first three weeks of her stay at the hospital she was out of bed once, when she was put in an invalid's chair and taken to the porch for a few minutes. After

plaintiff had been at the hospital some two or three weeks, Dr. Lester Hall, who had been asked by the plaintiff's husband to attend his wife, performed a minor operation on plaintiff. He found that in giving birth to her first child the perineum was lacerated, and he cut away the old scar tissue and sewed up the lacerated perineum.

"At the end of five weeks plaintiff left the hospital and was taken in a carriage to the Coates House, in Kansas City, where she remained three days, and then took a night train for home, lying down in a sleeper as soon as she entered it. Reaching Ft. Reno, she was immediately put to bed, which she was unable to leave, even with the help of assistants, for two or three months afterwards, during which time a nurse constantly attended her. Dr. A. M. Chase, an army surgeon stationed at Ft. Reno, was called in immediately upon Mrs. Partello's arrival. He found her in a fainting condition, and gave her several hypodermic injections of strychnine, and did not leave her for hours. She was partially unconscious; her extremities were cold and pulseless and she was without rallying power. In appearance, she was emaciated and sallow. A few days later Dr. Chase made a physicial examination of plaintiff, and found the womb fixed and the patient suffering from great tenderness of the abdomen. The broad ligaments supporting the womb, and the surrounding tissues, he found inflamed and enlarged. There was also a swelling in the abdominal region which lasted for weeks. In his opinion this condition was due to an acute injury, a blow or concussion. He visited her three times a day for a period of about two months, and continued to visit her at intervals up to the time of testifying; he thought that the injury received by plaintiff had almost destroyed her nervous system, and that her health and vigor were permanently impaired.

"Dr. J. H. Ford, assistant surgeon at Ft. Reno, testified that plaintiff, before her injury, was remarkably strong and robust and in excellent health. She had been accustomed, as the wife of the commanding officer, to attending the balls and social functions at the fort, and taking a leading part therein, and she was also fond of doing her own housework, although it was not necessary for her to do so. She had not suffered from any chronic disease or serious womb trouble. The first time Dr. Ford saw plaintiff after the infliction of the injury was on November 15, 1904, at the Coates House, after she left the hospital and just prior to her return to Ft. Reno. To him 'her appearance indicated that she had undergone some violent shock.' 'She had lost greatly in weight and was suffering from a nervous lack of strength.' He further testified that her ill condition had steadily progressed, and that she was a nervous and physical wreck. He did not think it possible that she could ever be restored to health.

"Dr. John R. Snell, a physician living in Kansas City, made an examination of plaintiff just before the trial and testified that he regarded Mrs. Partello as a nervous wreck and that her ill condition was permanent."

We will supplement the foregoing statement as to the injuries of plaintiff, based upon the testimony in behalf of plaintiff at the first trial, by a portion of the testimony showing her condition at the time of the second trial and during the years intervening between the first and second trials. Plaintiff, at the second trial, testified in part as follows:

"Q. Tell the jury, Mrs. Partello, whether or not at any time since your injury in 1904 you have been able to eat solid food? A. Not at all. I have tried to several times, and been desperately ill from it. I use nothing but liquid food.

"Q. What do you eat? A. Just milk, raw eggs, soups, cereals.

"Q. That has continued for how long? A. Five years and a few months.

"Q. I will have you tell the jury also what was your ability to sleep during this first year after you went from Kansas City? A. I couldn't sleep at all, my nervous system was in such a state, without something to make me sleep, probably an hour at a time. .

. . . .

"Q. From what point in your side would this pain proceed? A. In my right side.

"Q. Where with reference to the point at which you first felt it after you regained consciousness in the hospital? A. In my side.

"Q. Where was the pain that you then felt with reference to the one you first felt in Kansas City? A. The same pain.

"Q. Tell the jury whether or not that is the point from whence the pains that you have felt have always proceeded? A. It is.

"Q. While I am on that subject, I will ask you, Mrs. Partello, how long it was after this collision until the swelling in your side and the lower part of the abdomen subsided or went down? A. Nearly a year I couldn't wear any clothes. It never has gone down entirely. My side is much larger than it ever was. ::

"Q. That swelling is greatest at what particular point? A. On my right side (indicating). . . .

"Q. How long did you remain at Ft. Reno after you were hurt? A. Over a year.

"Q. You lived there during the former trial of this case? A. I did.

"Q. When you returned there, after your trial, what was your physical condition? A. A perfect invalid.

"Q. Did you have any spells of acute sickness? A. All the time.

"Q. Following the trial up here? A. Oh, yes, I was confined to my bed.

"Q. When? A. After I went home I was continuously sick all the time. . . .

"Q. Going back to the time of this collision I will ask you to tell the jury what sensation or feeling, if any, did you have in your womb when you regained consciousness? A. Very, very sore.

"Q. And how long did that severe soreness continue? A. For a year afterwards.

"Q. Tell the jury whether or not you had ever had any soreness before that time in your womb? A. Never. . . .

"Q. You say that you had, after this accident, falling of the womb? A. I do.

"Q. Would it not go back to its proper place? A. It has never gone back.

"Q. It did not? A. Never has been in the right place since. . . .

- "Q. Now, Mrs. Partello, have you any objection to being examined by Dr. Cordier or Dr. Block or Dr. Ayers? A. None in the least."

The request of defendant for permission to have plaintiff examined was made on the first day of the trial. The defendant did not have the plaintiff so examined, but after the jury was instructed and counsel for plaintiff had begun the argument of the case, the defendant requested the court to permit Dr. Ayers to testify that he had called on the plaintiff to examine her and that she would not permit him to do so. The court refused the request thus made.

Appellant assigns as errors: First, That two jurors, during the progress of the trial, read an article in the Kansas City Star relating to the case on trial and which stated the amount of the former verdict, and the refusal of the court, upon its attention being called to the fact, to discharge the jury and impanel a new jury to try the case as requested by defendant; second, misconduct of counsel for plaintiff, in his argument to the jury, and the refusal of the court to sus-

tain defendant's objection thereto; third, That "the court committed error in giving plaintiff's instruction number 5 on the measure of damages;" fourth, That the verdict was so excessive as to show that the jurors were influenced by prejudice against the defendant. In appellant's reply brief an additional assignment is made for the first time, namely, that the court committed error in giving instruction numbered 3, at the request of the plaintiff.

I.   During the introduction of plaintiff's testimony counsel for defendant was permitted to ask the jurors if any of them had read articles relating to the case on trial, which had appeared in the newspapers of Kansas City the day before. Two of the jurors answered they had read the article in the Kansas City Star. Counsel for defendant made a statement as to what the article in part contained, but it was not incorporated in the record at the time, nor does the record show that it was exhibited to the court. Neither were the jurors asked as to the effect, if any, the reading of the article had upon their minds. The court refused to discharge the jury as requested by the defendant and the defendant excepted.

The tenth ground of the motion for a new trial alleges that the court erred in refusing to discharge the jury on the defendant's motion, when it was shown that two of the jurors had read the said newspaper article. No affidavit, identifying the newspaper article, was filed in support of the motion for a new trial.

Assuming that this ground of the motion was properly before the trial court for consideration, appellant's complaint is without substantial merit. The article begins as follows: "A $50,000 suit up again. The Partello case in court for the second time. A jury's verdict of $30,000 against the Missouri Pacific was excessive, even the plaintiff admitted—Supreme Court remanded it." It is not claimed that the re-

mainder of the article unfairly stated the facts as to defendant's side of the case, and it is too obvious for argument that the part quoted was more prejudicial to the plaintiff than to the defendant. If the article had any tendency whatever to influence the jury it would be to convince them that a verdict for thirty thousand dollars had been pronounced and was admitted to be excessive, and was not and would not be permitted to stand.

In the case of Copeland v. Wabash Railway Company, 175 Mo. 650, this court had before it for decision a question not dissimilar in its facts from that now under consideration. The case was being tried a second time. One of the jurors, during the trial, obtained a copy of a newspaper containing an article purporting to give the facts of the case on trial and making reference to the result and the standing of the jury as to the amount of damages on a former trial. Discussing the question thus presented this court, l. c. 679, said: "There is nothing said or intimated in this article with respect to the right of plaintiff to recover. It does not undertake to espouse his cause, or to attribute his injury to the fault or negligence of defendant, but simply gives an impartial statement of how the jury stood upon the former trial and a few facts connected with the accident; and does the fact that pending the trial some of the jurors read the article, furnish a sufficient reason for interference by this court, and for a reversal of the judgment upon that ground? We think not. The matters stated in the article, even if they had been published in either of the papers and read by the jurors before they were selected to try the case, would not have disqualified them, and certainly the reading of the article thereafter and while serving as jurors would not of itself be sufficient cause for setting aside the verdict by the trial court, or for a reversal of the judgment by this court upon that ground."

Following the above excerpt, this court reviewed a number of cases in which the same question was passed upon, supporting the conclusion of the court that the defendant was not entitled to a new trial upon the ground considered.

There is this difference between the Copeland case and the case at bar. It is stated by appellant in its brief that: ''Defendant does not contend that the mere fact of the jurors having read the article referred to, when considered alone, would be sufficient reason for asking this court to reverse the judgment in this case, but does contend that the result of the trial shows that the jurors were influenced by having read that article.'' In the Copeland case the alleged misconduct of the jurors was first called to the attention of the court in the motion for a new trial and the court at the hearing of the motion for a new trial was for the first time required to pass upon the question in the light of all the facts properly before it. In this case the question was raised by the defendant during the trial. It was competent for the defendant to have shown then by an examination of the jurors whether or not an opinion had been formed or whether the jurors had been or would be influenced by having read the newspaper article. This the defendant did not do, and it would not do to permit a party to take the chance of a favorable verdict and failing in that to claim the existence of prejudice of jurors, which he failed to show when he had the opportunity. Under the facts of this case, the question as to whether the court committed error is to be determined by its action when its ruling was made, upon the facts then before it, and not as though presented for the first time in the motion for a new trial. When the court made its ruling nothing was shown more than the mere reading of a newspaper article bearing upon the case by two jurors and that alone was not enough to warrant the court in discharging the jury.

II.   The alleged error in the giving of instruction numbered 5 for the plaintiff cannot now be considered. It is identical with an instruction given on the first trial and held to be a correct statement of the law by this court on the former appeal.  That ruling has become the law of the case and the question there decided will not be again considered on a subsequent appeal.  [Overall v. Ellis, 38 Mo. 209; Metropolitan Bank v. Taylor, 62 Mo. 338; Heinzeman v. Railroad, 199 Mo. 56; Ashby v. Gravel Road Co., 111 Mo. App. 79.]

III.   Error is complained of in the giving of instruction numbered 3 for the plaintiff.  That instruction is as follows:

"The court instructs the jury that if they find and believe from the evidence that on the 9th day of October, 1904, the plaintiff was a passenger on one of the defendant's cars, and that while the plaintiff was in the exercise of due care, the defendant by its agents and servants carelessly and negligently ran the train upon which the plaintiff was riding upon and against another engine then being used and operated upon the defendant's said railway, and that thereby the plaintiff was injured, then the law presumes that such injury to plaintiff was caused by the defendant's negligence, and such facts if proven to the satisfaction of the jury by the preponderance of the evidence make out a presumptive case for the plaintiff, and you should find a verdict for the plaintiff unless you further believe from the evidence that notwithstanding this presumption the defendant at the time of the happening of the injury in fact had then fully performed or was then fully performing its duty as defined and stated in the other instructions herein toward the plaintiff as such passenger, or that such injury to the plaintiff, if any, did not occur because of any failure of the defendant in such respect."

Appellant's complaint against the foregoing ·instruction is that upon a finding of the facts, hypothetically stated, as to the relation of passenger and carrier, collision, injury, etc., the instruction tells the jury that, ''then the law presumes that such injury to plaintiff was caused by the defendant's negligence, and such facts if proven to the satisfaction of the jury by preponderance of the evidence make out a presumptive case for the plaintiff,'' etc., etc.

We are not disposed to consider the correctness of this instruction in the matter complained of, as an original proposition, for the reason that in the case of Logan v. Railway Co., 183 Mo. 582, this court had before it an instruction which contained the identical language to which exception is now taken. Passing upon the question presented, the court, l. c. 607, said: ''We are unable to appreciate the contention of defendant, that, as the cause of the accident was known, it was error to instruct the jury concerning the presumption arising from the relation of passenger and carrier. Because of that relation between plaintiff and defendant at the time of the injury, when he showed that fact, the derailment of the car and his injury, he made out a prima facie case, while under any other circumstances the burden would have been upon him to show negligence, or circumstances from which negligence might be inferred in order to entitle him to recover; and it must logically follow that when plaintiff showed those facts the presumption was that the injury was occasioned by the negligence of the defendant. If the law raises such a presumption it would seem not improper to so state in an instruction.'' That case is decisive against appellant's contention and we hold that the court did not commit error in the giving of said instruction numbered 3.

IV. In the argument of the case counsel for plaintiff, addressing the jury said: ''This is a very grave

and serious charge, gentlemen, to make against anybody, not only that she had been living the life of an impostor all these years in relation to this case, but that upon three several occasions she has sworn as a witness to testify with uplifted hand before God to tell the whole truth concerning the case, and she has added perjury to her other sins as connected with this case. Surely a more far-reaching charge could not be made against an individual, if she was injured on that October day and if she has been suffering through all these years as having been injured. They came here four years ago and they come again to-day in this trial to add gross insult to the injuries that they have done her." Counsel for defendant objected to the foregoing remarks "for the reason that they are not based on any evidence in this case and are an improper argument and are highly prejudicial to the defendant," etc. The court overruled the objection and the defendant excepted.

The former trial and the testimony of the plaintiff thereon had been frequently referred to when the plaintiff was on the witness stand. Expert witnesses testified in behalf of the defendant, whose testimony, if believed, would prove that plaintiff not only gave false testimony, but that she was an impostor and was attempting to deceive the jury as to her injuries. Other expert witnesses corroborated the plaintiff.

Under the issues and evidence thus before the jury, was counsel for plaintiff guilty of misconduct in making the remarks complained of? It must be admitted that the language used was not indecorous, abusive or indecent, and further that it was based upon the facts in evidence. Counsel for appellant assume in their brief that an attorney goes beyond the bounds of legitimate argument and is guilty of misconduct if, basing his remarks on the facts in the record, he appeals to the sympathy or prejudice of the jury, even though it be in dignified and decorous language, free

from abuse or offensive epithet. We do not agree with that view of the law. In the case of Franklin v. Railroad, 188 Mo. l. c. 545, this court said: "A misstatement by an attorney in his argument to the jury of a material fact is ground for reversal of a judgment in his favor; but when the remarks complained of do not amount to a misstatement of a material fact, but rather the venting of offensive epithets, it is not ordinarily a ground for reversal, but should be corrected by the trial court as a breach of decorum and an offense against the dignity of the court." In the case of Brown v. Swineford, 44 Wis. 282, the following language was used by Judge RYAN and has been widely approved by the courts and text-writers, namely: "It is the duty and right of counsel to indulge in all fair argument in favor of the right of his client; but he is outside of his duty and his right when he appeals to prejudice irrelevant to the case. Properly, prejudice has no more sanction at the bar than on the bench. But an advocate may make himself the *alter ego* of his client, and indulge in prejudice in his favor. He may even share his client's prejudices against his adversary as far as they rest on the facts in his case. But he has neither duty nor right to appeal to the prejudices, just or unjust, against his adversary, *dehors* the very case he is to try. The very fullest freedom of speech within the duty of his profession should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof." And in the case of Tucker v. Henniker, 41 N. H. 317, a case also which has received general approval, discussing the same subject, the court said: "In his addresses to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings; to arraign the conduct of the parties; to impugn, excuse, justify or condemn motives, so far as they are

developed in evidence; assail the credibility of witnesses when it is impeached by direct evidence or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance upon the stand or by circumstances." [1 Thompson on Trials, sec. 965; Evans v. Town of Trenton, 112 Mo. 390.]

According to these authorities, arraigning the conduct or impugning the motives of an adversary, or appealing to the prejudice against him, in decorous language, is condemned only when it does not rest on the facts of the case. And were the rule otherwise, very few verdicts in hotly contested cases with conflicting testimony would stand.

There was a sharp conflict between the testimony of the plaintiff and the witnesses who corroborated her, and the testimony of the witnesses for the defendant. If the testimony of the defendant's witnesses was true then that of plaintiff was false and that was all that was assumed by counsel in the remarks complained of. On the other hand, if plaintiff was telling the truth, then it cannot be said that counsel was not within his rights in calling attention to the meaning of the attack upon the veracity of his client. Under the doctrine of the authorities cited we hold that counsel for plaintiff was not guilty of misconduct in the language used and the court did not err in overruling the defendant's objection.

V. It is finally insised that defendant is entitled to a new trial for the reason that the verdict is excessive and that the jury was influenced by passion and prejudice. The first verdict was for thirty thousand dollars. A remittitur was entered by the plaintiff for ten thousand dollars and judgment was then rendered for plaintiff for twenty thousand dollars. This court held that amount excessive and defendant was awarded a new trial on that ground.

It is the province of the jury to find the amount

of damages in cases of this class, and while this court
will interfere and grant a new trial when the damages
are so large as to warrant the inference that the ver-
dict was the result of passion and prejudice, it has
always been disposed to defer to the fact that two
juries, with better opportunity to pass upon the ques-
tion, have found the damages at about the same
amount.   In the early case of Goetz v. Ambs, 27 Mo.
l. c. 34, this court said:  "The judgment on the first
verdict in this case was reversed because the damages
allowed by the jury were thought to be excessive. [See
22 Mo. 170.]   On the last trial the verdict was for a
greater amount than on the first, and it is now argued
that the objection which was fatal to the first judg-
ment applies with greater force to this one.  But, in
our opinion, the fact that one judgment has been re-
versed on account of excessiveness of the damages is
the best reason why the second should not be reversed
for a like cause.  Whilst the estimate of damages in
actions of this kind is the proper office of the jury, the
court thought that the evidence did not justify so
large a verdict, and that justice would be promoted
by giving the defendant a new trial before another
jury.  A second trial has taken place and a larger
verdict has been returned, without any imputation on
the conduct of the jury, and something is due to the
opinion of two juries.  Another interference by the
court would not only be an unwise exercise of its pow-
er, but would seem to be a usurpation of the province
of the jury; and we have no assurance that if another
new trial were granted the defendant would be more
fortunate than he has been."   And in the case of Min-
ter v. Bradstreet Co., 174 Mo. l. c. 504, the court said:
"But it is insisted that 'the verdict is grossly exces-
sive, and the result of passion and prejudice against
the defendant.'  It is true the verdict is large, but it
is the second one in the case."   The Kansas City Court
of Appeals, in the case of Loker v. Elec. Ry. Co., 94

Mo. App. 1. c. 485, discussing the question of the excessiveness of the verdict, said: "The verdict of two juries, practically the same, ought to be conclusive of the case." [See, also, Porter v. Railroad, 71 Mo. 1. c. 83.] In the recent case of Shohoney v. Railroad, 231 Mo. 1. c. 141, LAMM, J., speaking for the court, on the same subject, said: "If the verdicts had been the same, that would be some evidence both were fair."

If the testimony in behalf of the plaintiff is to be believed, and that was a question for the jury, she was an active, vigorous woman, in the enjoyment of perfect health, before she met with the accident on appellant's train. Since then she has been a physical and nervous wreck, never free from pain and suffering from her injuries. In view of the fact that two juries have returned verdicts in the same amount, we cannot say that the verdict at the second trial was the result of passion and prejudice.

However, as plaintiff entered a remittitur of ten thousand dollars of the sum recovered in the first trial, thus recognizing twenty thousand dollars as compensation for her injuries, we are not disposed to allow a judgment on the second trial to stand for an amount in excess of that sum. Accordingly it is ordered that the judgment herein shall be affirmed for the sum of twenty thousand dollars, as of the date of the return of the verdict and the rendition of the judgment, and to bear interest from that date, if the plaintiff shall, within ten days from this date, remit the sum of ten thousand dollars as of the date of said verdict. Otherwise the judgment will be reversed and the cause remanded for a new trial. It is so ordered.

PER CURIAM.—The foregoing opinion of KEN-NISH, J., in Division Two in this case, is adopted by this court as its opinion here, with this modification:

Plaintiff is required to enter a remittitur of $20,000 upon her verdict and judgment of $30,000, as and of the date when the same was entered and such judgment will be permitted to stand for the sum of $10,000, as and of the date of its original entry. Such remittitur shall be entered within ten days from this date and upon the entry of the same the judgment thus reduced is affirmed. If plaintiff decline within said time to enter such remittitur, then this cause is reversed and remanded.

*Valliant, C. J., Lamm, Graves* and *Ferriss, JJ.,* concur; *Woodson, J.*, is of the opinion that we should only reduce the judgment by the sum of $15,000; *Brown* and *Kennish, JJ.*, adhere to the ruling upon this question by Division Two as stated in the opinion of *Kennish, J.; Kennish, J.*, files separate opinion on this *per curiam* opinion, dissenting therefrom.

## DISSENTING OPINION.

KENNISH, J.—I consider the *per curiam* order, requiring the plaintiff, as a condition to an affirmance of the judgment, to remit two-thirds of the amount of the verdict returned on a second trial of this case, so at variance with established principles of our jurisprudence that I am not disposed to allow it to pass without comment.

On the first trial the jury returned a verdict in favor of plaintiff for thirty thousand dollars. This court then said that such a verdict "cannot be accounted for on any other theory than passion or prejudice," and for that reason, and that alone, the cause was reversed and remanded for a new trial. A second trial was had and a different jury of twelve men to whose judgment the issues were submitted, who saw the plaintiff's helpless and incurable condition, who saw and heard the plaintiff and the many witnesses who testified, four years after the first trial and five years after the injury, returned a verdict for the same

amount.   The judge before whom the case was tried
refused to hold the verdict excessive.   By the *per
curiam* order herein, considered in connection with
the result of the first trial, this court in effect says
to the plaintiff, ''You shall take one-third of what two
juries have said was compensation for your injuries,
or nothing.''   This is the inevitable consequence, for,
although the *per curiam* opinion says to the plaintiff,
''You shall take only such a sum, or a new trial,'' it
is obvious that a new trial is not compensation for
injury, and as human life has a limited period of ex-
istence (a good part of plaintiff's has passed since
this case began) and the court goes on, the foregoing
statement is not an exaggeration of the situation pre-
sented by the facts of this case.   Juries may return
verdicts, but if an appellate court, with equal regular-
ity, will set them aside, it does not take a prophet to
foretell what will be the end of such a contest.   It is
shown by the authorities cited in the opinion herein
that an appellate court can well say that passion and
prejudice entered into and, vitiated one verdict, but
it cannot say that as to subsequent verdicts, when dif-
ferent juries, on the same facts, reach the same result.
In view of the constitutional guaranty of the inviolate
right of trial by jury in such cases as the one in hand
and of the fact that the amount of the recovery is of
the essence of such right, and assuming the good faith
and impartial judgment of this second jury as we must,
there being nothing in the record to the contrary, the
question arises, indeed projects itself, Who is the final
arbiter of the compensation, in a case of unliqui-
dated damages, the jury or an appellate court?   If
the latter, as the ruling in this case must be construed,
then what becomes of the inviolate right of trial by
jury?   The only purpose of a suit is to obtain the re-
dress prayed for, in this case compensation for the
injuries sustained, and if the court assumes the right
to have the last word, and in the end to substitute its

judgment for that of an honest jury, it may well be asked, What is the function of a jury in a case at law, or rather, what is left of it?

It is provided by section 1994, Revised Statutes 1909: "The court may award a new trial in any issue, upon good cause shown; but not more than one new trial of the same issue shall be granted to any one party." And by section 2023, Revised Statutes 1909: "Only one new trial shall be allowed to either party, except, first, where the triers of the fact shall have erred in a matter of law; second, when the jury shall be guilty of misbehavior; and every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted."

It was with misgivings that the court, so far as the writer was concerned, made it a condition of affirmance, in the opinion herein, that a remittitur of ten thousand dollars should be entered, and such condition was imposed only because of the fact that plaintiff, in a former trial, had entered such a remittitur and thus acknowledged such a sum as full compensation.

The case now presents these facts: Two trials have resulted in a verdict for plaintiff, each in the sum of thirty thousand dollars. The record, on the first appeal, was held free from error, except that the verdict was excessive, and on that ground alone a new trial was granted. On the second appeal the record is again held free from error, except as to the amount of the verdict, and a new trial is allowed on the same ground, unless plaintiff relinquishes two-thirds of the compensation awarded by the jury. I must confess my utter inability to harmonize such views as to the power and scope of our judicial functions with the foregoing statutes and the constitutional guaranty of the inviolability of the right to a jury trial.