WILLIAM A. CURRY, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAIL-
WAY COMPANY, APPELLANT.*

In the Springfield Court of Appeals.   Opinion filed June 9, 1927.

---

*Corpus Juris-Cyc. References: Carriers, 10CJ, p. 1001, n. 21; p. 1002, n. 23; p. 1072, n. 15.

2

*E. T. Miller* and *Ward & Reeves* for appellant.

*Douglass & Inman* and *A. T. Brewster* for respondent.

BRADLEY, J.—This is an action for personal injury. Plaintiff recovered and defendant appealed.

Plaintiff received the injuries for which he sues in a wreck September 1, 1922. In the petition plaintiff invoked the rule of *res ipsa loquitur*. The answer is a general denial and a special plea that the wreck was caused by an unprecedented rainfall and flood which could not have been foreseen or anticipated.

Error is assigned (1) on the petition; (2) on the refusal of an instruction in the nature of a demurrer to the evidence at the close of the case; (3) on the admission of evidence; and (4) on the instructions.

It is contended that the petition does not state a cause of action. The petition alleges that plaintiff was a passenger on the train at the time of the wreck; that he boarded the train at St. Louis; that his destination was Steele, Missouri, and that he had paid his fare. Then follows this allegation: "That while he was a passenger on said train, on said line of railroad as aforesaid, and when said train had reached a point on its said line of railroad at or near Starland in the county of Perry and State of Missouri, and while it was crossing a bridge over a creek, the bridge gave way, and caused the train on which plaintiff was riding to fall to the ground with great force and violence; that as a result of the giving way of the bridge or trestle and fall of the train or part of the train, plaintiff sustained serious and permanent injuries as follows."

Following the allegation set out above are the specifications of injury somewhat in detail, and then this allegation: "That said injuries were directly caused on account of the negligence of the defendant."

The mere allegations that the relation of carrier and passenger existed, and that while such relation existed the passenger was injured, in connection with the carriage, without the further averment in general terms, at least, that the injury resulted from the carrier's negligence, would not be sufficient to state a cause of action under the rule of *res ipsa loquitur*. [Rawson v. Railroad, 129 Mo. App. 613, 107 S. W. 1101; Reel v. Consolidated Investment Company, 236 S. W. (Mo. Sup.) 43.] But in the petition here it is specifically alleged that the injuries complained of "were directly caused on account of the negligence of the defendant." The petition, we think, is sufficient to state a cause of action under the rule of *res ipsa loquitur*.

The sufficiency of the evidence is challenged. This assignment is based upon this course of reasoning. It is conceded that plaintiff made a prima-facie case based on a presumption, when he made proof (1) that he was a passenger; (2) that the train wrecked; and (3) that he was injured in the wreck. The prima-facie case based on a presumption, defendant contends, was totally destroyed by the evi-

dence of defendant whereby, it is argued, defendant conclusively established that there was no negligence (1) in the equipment of the train; (2) in the operation or speed of the train; (3) in the construction, maintenance and inspection of the bridge; but that the wreck was caused by *vis major*, here an unprecedented rainfall. Defendant says that having established the facts, having brought in the facts, the presumption upon which plaintiff's prima-facie case rested, vanished, went out, and that the foundation of plaintiff's prima-facie case having been destroyed, the cause was left unsupported by presumption or evidence. This *status* having been created, defendant urges, plaintiff could not recover unless he brought forward evidence of some specific act or acts of negligence on the part of defendant. It is contended that plaintiff failed to offer such evidence, and that therefore, he cannot recover, and that the demurrer was erroneously refused. As supporting this theory defendant cites Guthrie v. Holmes, 272 Mo. l. c. 233, 198 S. W. 854; Tetwiler v. Railroad, 242 Mo. l. c. 194, 145 S. W. 780; Glassman v. Harry, 182 Mo. App. 304-308, 170 S. W. 403; Hite v. Met. St. Ry., 130 Mo. l. c. 138-140; 31 S. W. 262, 32 S. W. 33; Sowders v. Railroad, 127 Mo. App. 119, 104 S. W. 1122; Mockawik v. Railroad, 196 Mo. 550, l. c. 571, 94 S. W. 256; Bragg v. Met. St. Ry., 192 Mo. 331, l. c. 354, 91 S. W. 527; Hurck v. Railroad, 252 Mo. 39, l. c. 48, 158 S. W. 581; Evans v. Railroad, 222 Mo. 435, l. c. 457, 121 S. W. 36; Turner v. Haar, 114 Mo. 335, l. c. 346-7, 21 S. W. 737; Wolf v. Express Company, 43 Mo. 423; Read v. Railroad, 60 Mo. 199, l. c. 206; Sawyer v. Railroad, 37 Mo. 241, l. c. 259; Reeves v. Railroad, 10 U. S. (Wall.) 189, l. c. 190; Norton v. Heidorn, 135 Mo. 608, l. c. 616, 37 S. W. 504; Burge v. Railroad, 244 Mo. 76, l. c. 94, 148 S. W. 925; State ex rel. v. Ellison, 268 Mo. 239, l. c. 257, 187 S. W. 23; Rashall v. Railroad, 249 Mo. 509, l. c. 522, 155 S. W. 426; Brown v. Brown, 237 Mo. 662, 141 S. W. 631.

On the other hand plaintiff contends that under the rule of *res ipsa loquitur* as applied in an action by a passenger against a common carrier the presumption arising by showing (1) that the relation of passenger and carrier existed; (2) that there was a wreck; and (3) that the passenger was injured because of such wreck, is a presumption of substance and of such character and weight that the prima-facie case made upon the presumption is for the jury regardless of the weight of defendant's evidence tending to rebut the presumption. Whitlow v. St. Louis-San Francisco Railway Company, 282 S. W. (Mo. App.) 525, is a case growing out of the same disaster as the cause at bar. The evidence in the Whitlow case, as shown in the opinion, is quite similar to the evidence here, and in that case Judge SUTTON said: "In the state of the evidence disclosed by this record it is clear that plaintiff was entitled to go to the jury upon presumptive negligence arising under the *res ipsa loquitur rule,* which is

applied with peculiar vigor in passenger cases.'' Supporting this pronouncement that St. Louis Court of Appeals cited Gibson v. Wells (Mo. App.), 258 S. W. 1; Carlson v. Wells (Mo. Sup.), 276 S. W. 26, 1. c. 29; Brown v. Louisiana & M. R. R. Co., 165 S. W. 1060, 256 Mo. 522, 1. c. 535; Anderson v. Kansas City R. Co., 290 Mo. 1, 283 S. W. 203; Cecil v. Wells, 214 Mo. App. 193, 259 S. W. 844; Stauffer v. Metropolitan St. R. Co., 243 Mo. 305, 147 S. W. 1032; Simpson v. Chicago, R. I. & P. Co., 192 S. W. (Mo. Sup.) 739; Price v. Metropolitan St. R. Co., 220 Mo. 435, 1. c. 463, 119 S. W. 932; 132 Am. St. Rep. 588; Mayne v. Kansas City Rys. Co., 287 Mo. 235, 229 S. W. 386; Norris v. St Louis, I. M. & S. R. Co., 239 Mo. 695, 1. c. 714, 144 S. W. 783; Hurck v. Missouri Pac. R. Co., 252 Mo. 39, 158 S. W. 581; Partello v. Missouri Pac. R. Co., 240 Mo. 122, 1. c. 136, 145 S. W. 55; Logan v. Metropolitan St. R. Co., 183 Mo. 582, 82 S. W. 126; Porter v. St. Joseph · Ry., Light, Heat & Power Co., 277 S. W. (Mo. Sup.) 913; Copeland v. Wabash R. Co., 175 Mo. 650 1. c. 675, 75 S. W. 106; Michaels v. New York Cent. R. Co., 30 N. Y. 564, 1. c. 571, 86 Am. Dec. 415.

The Whitlow case reached the Supreme Court and the ruling of the St. Louis Court of Appeals as to the presumption was approved [State ex rel. v. Daues et al., 290 S. W. (Mo. Sup.) 425.] The same ruling was made by the Supreme Court in Bond v. St. Louis-San Francisco Railway, 288 S. W. (Mo. Sup.) 777. The Bond case also was for injuries received in the same wreck as involved in the cause at bar. What the Supreme Court said in the Bond case as to the weight of the presumption was reaffirmed and quoted in the case of State ex rel. v. Daues et al., supra.

On cross-examination and in rebuttal plaintiff contends, however, that he did introduce substantial evidence tending to establish two specific acts of negligence, viz.; (1) That the bridge that collapsed was defective in construction; and (2) that defendant's employees did not observe the highest practicable degree of care, required by the law, to discover the danger and avoid the wreck.

We shall consider these in the order stated. The bridge that collapsed was 138 feet in length and spanned Starland creek one and a half miles south of station Seventy-six. The railroad runs in a general north and south direction, but some of the witnesses said that at the bridge it ran east and west, while others said it was northeast and southwest. For practical purposes we may say that it was north and south. The train was southbound and reached this bridge about four o'clock in the morning, September 1, 1922. The bridge consisted of eleven bents of white oak and cypress piling, and these bents were fourteen feet apart and the piling of each bent were driven in a row at right angles to the track. The bents are designated in the record as Nos. 1, 2, 3, etc., beginning at the north end of the bridge. There were six piling in each bent except No. 5 which had eight.

The bridge was 225 feet west of the Mississippi river, and at the time of the wreck the river was low and the fall was fourteen feet from the bridge to the river. Starland creek is a mile and a half or two miles in length and is the outlet for the rainfall on the surrounding hills which are quite steep according to the record. Also several small streams empty into Starland creek in the territory which it drains. Bents 5 and 6 were washed out by the waters that came down Starland creek on the night of August 31st and September 1st and left the bridge unsupported for a distance of forty-two feet. The train was running about forty-five miles per hour when it reached Starland bridge. The momentum carried the engine and the two forward cars across the collapsing bridge, but these were overturned on the south side. The smoker, which plaintiff was in, and the chair car went down, but the Pullmans in the rear remained on the track north of the break.

Bents Nos. 5 and 6 were in the middle or main channel of the creek where the current was greatest. The creek bottom along the channel proper at the bridge was principally of sediment deposited during high water in the Mississippi river. The adjacent banks were of a sandy loam. The bridge was constructed in the spring of 1918, and when constructed it was from twenty-four to twenty-seven feet, at or near the middle, above the ground line. The piling were driven down to bedrock, and to depths as follows; Bent No. 1 to a depth of twenty-six feet; bent No. 2 to a depth of twenty-four feet; bent No. 3 to a depth of twenty-two feet; bent No. 4 to a depth of seventeen feet; bent No. 5 to a depth of ten feet; bent No. 6 to a depth of seventeen feet; bent No. 7 to a depth of twenty feet; bent No. 8 to a depth of twenty-two feet; bent No. 9 to a depth of twenty-two feet; bent No. 10 to a depth of twenty-four feet; bent No. 11 to a depth of twenty-six feet.

Between midnight and 2:30 o'clock on the morning of September 1st an unprecedented rain fell at and in the vicinity of Starland bridge. Some of the witnesses described it as the heaviest in over forty years. Others described it as a cloudburst. The creek with its banks was somewhat V shaped, and when the great volume of water came down the sediment deposit in the middle at the bridge was washed entirely away, leaving exposed the bedrock upon which the piling had rested. The extent of this exposure was, according to some of the witnesses, about fourteen feet in the middle of the creek where bents 5 and 6 were located. Other witnesses placed the exposed bedrock at three or four feet in width. The depth of the wash decreased proportionately from the center to the banks north and south.

We are urged to say as a matter of law that there was nothing shown in connection with the construction of Starland bridge to make an issue of fact upon defective construction. Plaintiff intro-

duced evidence tending to show that some of the pilings were defective, but we do not deem it necessary to consider at length this feature, but shall confine our consideration on the issue of defective construction to the question of support for the piling in bents 5 and 6. There was no support for the piling except the earth into which they were driven. The height of the bridge at the middle was from twenty-four to twenty-seven feet above the ground level when it was constructed. But the ground level varied from time to time because of the wash from rainfall when the Mississippi river was low, and deposit from Mississippi water when the Mississippi river was high and backed up the creek. Or to state the situation otherwise when the bridge was built it was ten feet from the ground level down to the bedrock where bent No. 5 was placed, and seventeen feet from the ground level down to bedrock where bent No. 6 was placed; and this depth varied from time to time depending on the wash and deposit.

From the record we may deduce the following facts which defendant was in law bound to know when the bridge was constructed; (1) That Starland creek was the outlet from the rainfall upon precipitous hills in the immediate vicinity; (2) that the cheek was short in length and that other small creeks discharged into it; (3) that the water from rainfall upon the area drained by the creek would, soon after falling, because of the topography of the area, reach the bridge in bulk, proportionate to the rainfall and stage of water in the Mississippi river; (4) that the bed of the creek from bedrock up was composed of a shifting deposit; (5) that this deposit never became compact because of frequent wash and redeposit; (6) that the fall from the bridge to the river, at low water, was approximately three-fourths of an inch to the foot; (7) that if a heavy rain fell upon the area drained by the creek when the Mississippi river was low the water in the creek at the bridge would flow with great velocity; and (8) that such flow would rapidly diminish the piling support, and especially that of bents 5 and 6 in the middle of the creek where the pressure and the violence of the flow would be the greatest, and where the support was least.

With this information defendant constructed the Starland bridge with only ten feet of shifting deposit supporting bent No. 5, and only seventeen feet of the same kind of deposit supporting bent No. 6. It was shown at the trial that it would have been practical to have anchored the piling in concrete, especially where the wash was greatest and the depth to bedrock the least. And it also appears that when the bridge was reconstructed after the wreck the piling were anchored in concrete. But without considering what was done in the construction of the bridge after the wreck we cannot say that there was no evidence of a substantial nature tending to show that the bridge was defective. The facts as we have assembled them in the

preceding paragraph speak for themselves, and from these facts we do not think that it can be said that defendant as a matter of law was not remiss in its duty to exercise that highest degree of practicable care, enjoined upon it by the law, in the construction of the Starland bridge over which its passengers had to go.

Was the care required by the law observed to discover the peril and avoid the wreck? In view of the ruling by the Supreme Court as to the weight of the presumption plaintiff invoked it is not necessary to consider the evidence further. We may say, however, that there was evidence tending to show that had defendant's agents near the bridge observed that degree of care required the collapsed bridge might have been discovered in time to have averted the disaster.

The instruction in the nature of a demurrer to the evidence was properly refused.

There is nothing in the instructions and admission of evidence which, in our opinion, amounts to reversible error. The judgment should be affirmed and it is so ordered. *Cox; P. J.,* and *Bailey, J.,* concur.